IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EUROCHEM TRADING USA CORPORATION,

       Plaintiff,
  v.

JULIE L. GANSKE and W. KENT GANSKE,

       Defendants.

W. KENT GANSKE, individually and d/b/a AG
CONSULTANTS, and JULIE GANSKE,                    OPINION and ORDER

    Counter-Plaintiffs and Third-Party Plaintiffs,           18-cv-16-slc
and

WS AG CENTER, INC.,

       Third-Party Plaintiffs,
  v.

EUROCHEM TRADING USA CORPORATION,

       Plaintiff and Counter-Defendant,
and

EUROCHEM GROUP AG, SCOTT SIMON, IVAN
BOASHERLIEV, BENTREI FERTILIZER, LLC and
BEN-TREI, LTD.,

       Third-Party Defendants.

---

In this action for monetary relief pursuant to a guaranty agreement executed by defendants Julie L. Ganske and W. Kent Ganske , plaintiff EuroChem Trading USA Corporation ("ECTUS") has moved to strike defendants' demand for a jury with respect to all claims arising out of the guaranty. Dkt. 28. Specifically, ECTUS contends that the guaranty contains a jury waiver provision and that defendants' demand for a jury trial was untimely.

For the reasons explained below, I am granting ECTUS's motion to strike the jury demand with respect to ECTUS's collection claim (dkt. 31, Count VI) and the Ganskes' five counterclaims (dkt. 14, Counts I-VIII at pp. 11-20). The jury demand remains valid and applicable to the 10 claims alleged in the Third-Party Complaint (dkt. 15) and the non-collection claims alleged by ECTUS in its second amended complaint (dkt. 31, Counts I-V).

BACKGROUND FACTS

I. The Guaranty and Jury Trial Waiver

In 2017, defendants W. Kent Ganske and Julie Ganske executed a "Continuing Guaranty (Unlimited)," guarantying payment of all obligations of WS AG Center, Inc. (WSAG) and Agricultural Consultants (AG Consultants) due and owing to plaintiff ECTUS. W. Kent Ganske signed the contract on March 8, 2017 and Julie Ganske signed it on May 10, 2017. The guaranty contains the following provision that appears just above the Ganskes' signatures:

> **WAIVER OF JURY TRIAL**. NEITHER OF THE UNDERSIGNED GUARANTOR, NOR THE CREDITOR, NOR ANY ASSIGNEE, SUCCESSOR, HEIR, OR LEGAL REPRESENTATIVE OF THE SAME SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR ANY OTHER LITIGATION OR PROCEDURE ARISING FROM OR BASED UPON THIS GUARANTY, OR ANY DOCUMENT EVIDENCING, SECURING OR RELATING TO THE OBLIGATIONS OR TO THE DEALINGS OR RELATIONSHIP BETWEEN OR AMONG THE PARTIES THERETO; THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE CREDITOR TO ENTER INTO THIS TRANSACTION AND CONTINUE TO EXTEND CREDIT TO DEBTOR. GUARANTOR AND CREDITOR EACH ACKNOWLEDGE THAT THE PROVISIONS OF THIS SECTION HAVE EITHER BEEN BROUGHT TO THE ATTENTION OF EACH PARTY'S LEGAL COUNSEL OR THAT EACH PARTY HAD THE OPPORTUNITY TO DO SO.

Dkt. 1, exh. 4 at 2.

**II. ECTUS's Complaint and Amended Complaint and the Ganskes' Counterclaims**

On January 8, 2018, ECTUS filed its complaint in this case seeking to enforce the guaranty against the Ganskes and collect on a debt owed by WSAG and AG Consultants. ECTUS amended its complaint on January 17, 2018 to correct the name of defendant W. Kent Ganske. Dkt. 7. Both the original complaint and amended complaint contain a single count for collection under the guaranty.

On March 1, 2018, the Ganskes filed their answer to the amended complaint along with their affirmative defenses and a counter-complaint, which includes eight counterclaims alleging fraud in the inducement (Counts I and II) and misrepresentation (Count III) in conjunction with the guaranty,[1] a request for declaratory judgment with respect to whether certain claims are subject to arbitration (Count VI),[2] a request for a declaratory judgment that the guaranty is not valid for lack of consideration (Count VII), and a request for punitive damages (Count VIII). Dkt. 14. The Ganskes did not request a jury trial at that time. ECTUS answered the counter-complaint on March 22, 2018. Dkt. 22.

**III. Third-Party Plaintiffs' Complaint and Jury Demand**

On March 15, 2018, the Ganskes and WS AG Center, Inc. (the third-party plaintiffs) filed a pleading titled "Verified Counter-Complaint and Third-Party Complaint," consisting of 10 claims against ECTUS and other related companies and individuals for violations of the

---

[1] The counter-complaint does not contain a Count IV or V.

[2] ECTUS contends, and the Ganskes do not dispute, that Count VI is no longer at issue because the relevant parties have been dropped from the arbitration at issue in this claim.

3

Lanham Act, Defend Trade Secrets Act, Wisconsin Uniform Trade Secrets Act, Wis. Stat. § 134.01, and Wisconsin Deceptive Practices Act and tortious interference, injurious falsehood, misrepresentation, defamation, and theft. Dkt. 15. Although the third-party complaint did not contain a jury demand, the third-party plaintiffs filed a separate document on March 27, 2018, demanding "a trial by jury in the above captioned matter" on behalf of "defendants/counter-plaintiffs/third-party plaintiffs." Dkt. 25. In addition, at the preliminary pre-trial conference held in this case on March 27, 2018, a jury trial was scheduled for October 21, 2019. Dkt. 26. ECTUS filed its answer and affirmative defenses to the third-party complaint on April 5, 2018, dkt. 27, and moved to strike the jury demand on April 9, 2018, dkt. 28.

## IV. ECTUS's Second Amended Complaint

On April 17, 2018, a few weeks after moving to strike the Ganskes' jury demand, ECTUS filed a second amended complaint, adding other claims for goods sold, unjust enrichment, and breach of contract. Dkt. 31. The Ganskes filed their answer to the second amended complaint, along with a jury demand, on May 15, 2018. Dkt. 45.

## ANALYSIS

ECTUS raises two challenges to the demand for a jury trial filed by the third-party plaintiffs: waiver and timeliness. ECTUS's primary argument is that the pre-litigation jury waiver provision in the contract signed by the Ganskes is enforceable as to ECTUS's collection claim (initially alleged in the January 2018 complaint and now Count VI of the second amended complaint) and all five of Ganskes' remaining counterclaims alleged in their March 1, 2018

4

counter-complaint. In a brief argument, ECTUS also contends that the jury demand was untimely filed with respect to the collection claim. As I discuss below, I am not convinced that the jury demand should be struck as untimely, but I agree that the waiver provision may be enforced as to the collection claim and the counterclaims and that any decision with respect to whether the guaranty was procured by fraud shall be resolved by the court.

I. Timeliness

Under Fed. R. Civ. P. 38(b), a party may demand a jury trial by serving on the other parties a "written demand–which may be included in a pleading–no later than 14 days after the last pleading directed to the issue is served." Typically, the "last pleading" is an answer, or in the case of a counterclaim, a reply. Fed. R. Civ. P. 12(a). Although a party waives a jury trial if the demand is not properly served and filed, Rule 38(d), the court may exercise its discretion to grant a party's belated request for a jury trial, Rule 39(b). The Court of Appeals for the Seventh Circuit has held that Rule 39(b) allows district courts "to grant an untimely demand for a jury, but only . . . if a good reason for the belated demand is shown." *Olympia Express, Inc. v. Linee Aeree Italiana, S.P.A.*, 509 F.3d 347, 352 (7th Cir. 2007).

Determining the last pleading directed to the collection claim in this case is complicated by the number of pleadings filed by the parties. *See Communications Maint., Inc. v. Motorola, Inc.*, 761 F.2d 1202, 1208 (7th Cir. 1985) (noting determination of last pleading not self-evident where both parties amended their original pleadings on numerous occasions). In *Motorola*, the court of appeals explained that because it is well-settled law that amendments or supplemental pleadings do not extend the time for making a jury demand "except as to new issues raised by

5

the new pleadings," the crucial decision is "at what point . . . [do] the pleadings finally frame[] the various issues to be put before the trier-of-fact; that is, when did the pleadings cease raising new factual issues, and begin simply alleging new legal theories or particularized facts." *Id.*

ECTUS contends that the last pleading directed to its collections claim is the Ganskes' answer, affirmative defenses, and counter-complaint, which were filed on March 1, 2018, more than 14 days before the filing and service of the jury demand on March 27.[3] For their part, the Ganskes argue that ECTUS's March 22, 2018 answer (or reply) to the counter-complaint was the last relevant pleading, which was only five days before they served the jury demand. In reply, ECTUS contends that the issues raised in the Ganskes' counter-complaint—including fraudulent inducement and misrepresentation—are not the same as the collection issue raised in the amended complaint.

ECTUS cites a few cases from other circuits that support its position that even though the collection claim and the counterclaims for fraudulent inducement and misrepresentation arise out of a common set of facts, the issues in these claims are not "essentially similar" because the ultimate issues for decision are different. *See First Wisconsin Nat'l Bank of Rice Lake v. Klapmeier*, 526 F.2d 77, 80 (8th Cir. 1975) (for purposes of jury demand, viewing counterclaim for fraud in the inducement as "new issue" distinct from original claim for collection of guaranty); *Winchester Indus., Inc. v. Sentry Ins.*, 630 F. Supp. 2d 237, 240 (D. Conn. 2009) (plaintiff's malpractice claim against insurance agent not "essentially similar" to claim for

---

[3] ECTUS agrees that the jury demand is timely as to the counterclaims, the third-party complaint, and the non-collection counts of the second amended complaint because all of those claims raise new issues not related to the collection claim.

6

declaratory judgment that insurance company had no obligation to defend or indemnify plaintiff for accident).

So, ECTUS makes a fair point that has some support in the case law; however, it is clear in this case that the Ganskes believed that all of the issues in the amended complaint remained open until at least the date on which ECTUS filed its reply to the counterclaims. Also relevant are the fact that ECTUS would suffer little prejudice from allowing a jury because this case is still at the pleading stage on the third-party claims, and the fact that we have new claims raised in the second amended complaint. Looking at the totality of these circumstances, I will exercise the court's discretion and find that the jury demand was not untimely with respect to the collection claim alleged in the original complaint. *See Winchester*, 630 F. Supp. 2d at 241 (finding same where plaintiffs' failure to make jury demand was not result of accidental oversight or carelessness but rather was predicated on belief that pleading remained open through reply to counterclaim).

## II. Waiver

The parties agree that the Ganskes signed a guaranty that contains a waiver of a jury trial, that Wisconsin substantive law applies to the contract in this case, and that Wisconsin allows contracting parties to waive jury trials. *See Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743 (7th Cir. 2010) ("[W]e uphold [waivers of the right to a jury trial] even in form contracts."); *IFC Credit Corp.v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 991 (7th Cir. 2008) (validity of contract provision waiving jury trial depends on law of jurisdiction whose rules will govern overall dispute); *Parsons v. Associated Banc-Corp*, 2017 WI 37, ¶ 35, 374 Wis. 2d 513, 533-34,

7

893 N.W.2d 212, 222 (parties' pre-litigation jury waver provision enforceable without additional proof that defendants' knowingly and voluntarily agreed to waiver). The parties dispute whether the agreement is enforceable and, if it is, whether the agreement applies to the collection claim and the counterclaims in this case.

### A. Scope of Waiver

ECTUS contends that the waiver provision applies to the collection claim and all of the Ganskes' counterclaims (fraud, misrepresentation, declaratory judgment, and punitive damages) because the guaranty language states unambiguously that the Ganskes waive their right to a jury trial "in any lawsuit, proceeding, counterclaim, or any other litigation or procedure *arising from or based upon this guaranty*." In support of its argument, ECTUS cites cases in which courts in this circuit and in Wisconsin have interpreted broadly the terms "arising from" and "arising out of" in arbitration agreements, finding that such language encompasses all disputes having their "origin or genesis in the contract," including fraud in the inducement. *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993); *see also Johnson v. Discovery Bank*, 2018 WL 840160, *2 (W.D. Wis. 2018) (quoting *Sweet Dreams Unlimited*); *Olson v. Ivanovic*, 2017 WI App 21, ¶ 40, 374 Wis. 2d 435, 896 N.W.2d 390 (same); *Minerals Dev. & Supply Co., Inc. v. Superior Silica Sands, LLC*, 2014 WI App 1, ¶ 49, 352 Wis. 2d 246, 841 N.W.2d 580 (agreement to arbitrate "any controversy, claim, question, disagreement or dispute . . . arising out of or relating to the Agreement" included fraud in the inducement claim).

The Ganskes try to distinguish these cases on the ground that they address arbitration clauses and not jury waivers, but this argument has no traction. In discussing the choice of law

8

issue with respect to jury waivers and arbitration clauses, the Court of Appeals for the Seventh Circuit noted that an agreement to arbitrate is "another form of jury waiver" that "surrenders not only a jury trial but also the right to any judicial forum" and applied the same standard to both. *IFC Credit Corp.*, 512 F.3d at 992, 994 (further explaining that even though UCC "designates a few kinds of provisions as valid only if separately signed," neither UCC nor Illinois law has "separate-signing or separate-negotiation requirement for a clause agreeing to a bench trial"). Therefore, I find that the waiver provision in this case can encompass all of the parties' disputes originating from the guaranty, including fraud in the inducement and misrepresentation.

### B. Validity

The Ganskes contend that their counterclaim of fraud in the inducement and allegations that the guaranty is void for lack of consideration render the whole contract—including the waiver provision—unenforceable. ECTUS agrees that the fate of the waiver provision is dependent on the validity of the guaranty itself, and if I am able to determine from the undisputed facts on summary judgment that the guaranty is void or unenforceable, then the jury waiver falls with it. *See IFC Credit Corp.*, 512 F.3d at 994 (noting same). However, the parties dispute what happens in the event there are material facts in dispute with respect to the fraud in the inducement claim: does the court apply the waiver provision and decide the issue or is the question sent to the jury despite the waiver provision? The Ganskes argue that they are entitled to a jury trial with respect to the fraud counterclaim, whereas ECTUS contends that they are not.

Although the Court of Appeals for the Seventh Circuit has not addressed directly whether a contractual waiver of a jury trial is effective against a claim that the contract containing the waiver was induced by fraud, it has stated in dicta that "[i]f the facts leave a material dispute requiring resolution by a trier of fact . . . then the jury-waiver clause might be applied to determine whether a judge or a jury makes the critical decision." *IFC*, 512 F.3d at 994-95 (drawing analogy to arbitration law that holds if parties sign contract with arbitration clause, arbitrator decides whether contract was signed only as result of fraudulent inducement).

Additionally, the Second and Tenth Circuit Courts of Appeals and several district courts have held that unless a party alleges that its agreement to waive its right to a jury trial was itself induced by fraud, the party's contractual waiver is enforceable with respect to an allegation of fraudulent inducement relating to the contract as a whole. *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007); *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837-38 (10th Cir. 1988); *Allyn v. W. United Life Assur. Co.*, 347 F. Supp. 2d 1246, 1255 (M.D. Fla. 2004) ("As Plaintiffs have failed to show that their assent to the jury trial waivers themselves was procured by fraud, the Court rejects Plaintiffs' arguments that the waivers are invalid."); *Morris v. McFarland Clinic P.C.*, 2004 WL 306110, at *2 (S.D. Iowa Jan. 29, 2004) (general allegation of fraud in the inducement with respect to contract does not avoid waiver provision); *Evans v. Union Bank of Switzerland,* 2003 WL 21277125, *2 n.1 (E.D. La. 2003) (relying on *Telum* in rejecting argument that jury waivers were unenforceable because plaintiffs asserted fraud with respect to aspects of the contracts wholly unrelated to waiver provision); *Gurfein v. Sovereign Group*, 826 F. Supp. 890, 921 (E.D. Pa. 1993) ("general allegation of fraud

in no way suggests that plaintiff's agreement to waive the right to a jury trial was involuntary or not knowing").

This is persuasive authority. As the court in *Morris* noted, "agreements to waive jury trials, as well as those fixing venue, making a choice of law, and the like would be practically unenforceable if they could be avoided simply by an allegation of fraud in the inducement." 2004 WL 306110, at *2. In this case, the Ganskes concede that they signed a contract with a jury waiver provision but claim that they did so because representatives of ECTUS made certain promises about entering a joint venture and extending an additional line of credit. The Ganskes do not allege that they were fraudulently induced to waive their right to a jury trial. Accordingly, because the Ganskes knowingly assented to a guaranty containing a jury waiver clause, their fraudulent inducement claim will be tried to the court, if necessary.

This being so, after summary judgment, I will consider presenting to an *advisory* jury any issues that remain with respect to the Ganskes' fraud claim, especially if any third-party or non-collection claims also survive and proceed to a jury trial. Fed. R. Civ. P. 39©. *See also City of Joliet, Illinois v. New W., L.P.*, 825 F.3d 827, 831 (7th Cir. 2016) (suggesting in dicta that district court should have empaneled one jury to hear all issues in case but have court resolve condemnation issues and jury resolve Fair Housing Act issues). We can address this possibility at the appropriate time.

ORDER

IT IS ORDERED that plaintiff EuroChem Trading USA Corporation's motion to strike the jury demand, dkt. 28, is GRANTED with respect to motion to strike the jury demand with respect to the collection claim (dkt. 31, Count VI) and defendants' five counterclaims (dkt. 14, Counts I-VIII at pp. 11-20). The jury demand remains valid and applicable to the 10 claims alleged in the Third-Party Complaint (dkt. 15) and the non-collection claims alleged plaintiff in its second amended complaint (dkt. 31, Counts I-V).

Entered this 25th day of June, 2018.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge