IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EUROCHEM TRADING USA CORPORATION,

      Plaintiff,
 v.

W. KENT GANSKE, individually and
d/b/a and sole proprietor of AG CONSULTANTS,
and JULIE L. GANSKE,

      Defendants.

OPINION and ORDER

W. KENT GANSKE, individually and d/b/a AG
CONSULTANTS, and JULIE GANSKE,

18-cv-16-slc

 Counter-Plaintiffs and Third-Party Plaintiffs,
and

WS AG CENTER, INC.,

      Third-Party Plaintiffs,
 v.

EUROCHEM TRADING USA CORPORATION,

      Plaintiff and Counter-Defendant,
and

EUROCHEM GROUP AG, SCOTT SIMON, IVAN
BOASHERLIEV, BENTREI FERTILIZER, LLC
and BEN-TREI, LTD.,

      Third-Party Defendants.

---

  This case presents disputes arising from plaintiff EuroChem Trading USA Corporation's (ECTUS's) sale of agricultural chemicals to one or more agri-businesses owned or controlled by defendant W. Kent Ganske, a Wisconsin resident. In a third-party complaint related to the underlying lawsuit, W. Kent and Julie Ganske, AG Consultants, and WS AG Center, Inc. ("WSAG") – to whom I will refer collectively as "Ganske"– allege that third-party defendant Scott Simon, the chief financial officer of ECTUS and the other corporate third-party defendants, spread false and malicious rumors about the financial stability of Ganske's businesses to Ganske's customers and vendors, in violation of federal and Wisconsin state law

related to tortious interference with contract, misrepresentation and deceptive practices, trade secrets, and defamation. *See* dkt. 15, ¶¶ 59-61.

Now before the court is Simon's motion to dismiss the third-party complaint against him for lack of personal jurisdiction. Dkt. 43. For the reasons stated below, I am denying the motion.

From the complaint and the documents submitted by the parties in connection with the pending motion, I draw the following facts, solely for the purpose of deciding this motion:

**JURISDICTIONAL FACTS**

Scott Simon has been a resident of Oklahoma since 2000 and is the chief financial officer of plaintiff EuroChem Trading USA Corporation ("ECTUS") and third party defendants Ben-Trei Fertilizer Company, LLC ("BT Fertilizer") and Ben-Trei, Ltd. ("Ben-Trei"). Simon has never resided in Wisconsin, he only visited Wisconsin once 10 years ago for 24 hours, and he does not personally do any business in Wisconsin. Simon's employers— ECTUS, BT Fertilizer, and Ben-Trei—sell and ship products to customers located in Wisconsin.

In November and December, 2017, Simon contacted four of Ganske's creditors (or suppliers) located in Wisconsin to discuss the possibility of filing an involuntary bankruptcy proceeding against Ganske. Simon left messages with two of the creditors, but his calls were not returned and Simon never spoke with anyone at the two companies. With respect to the remaining two creditors, Simon had a single, brief telephone conversation with a representative at each company, which consisted of Simon reading a script prepared for the creditor calls identifying ECTUS as a creditor of AG Consultants and WSAG, explaining the nature of an

2

involuntary bankruptcy case and the filing requirements for one, and asking if the creditor would be interested in joining such a proceeding. Simon avers that he spoke with or left messages for the chief financial officer, controller, or credit manager of each respective creditor and that he never attempted to speak to any sales person or employee involved in buying or purchasing.

Simon has not disclosed whom he called or the contents of the script that he used, but Ganske has submitted the contents of a message that Simon left on December 14, 2017 for Steve Guetter, the Executive Vice President of Finance at Rosen's Inc., which has headquarters in Minnesota and extensive operations in Wisconsin. In his message to Guetter, Simon states:

> Hello Steve my name is Scott Simon, I am the CFO for Eurochem North America, including Eurochem Trading USA, we have a mutual customer - Creditor in the form of WS Ag/Ag Consultants, I have a prepared statement from Counsel concerning a petition against WS Ag/Ag Consultants for an involuntary bankruptcy proceeding, I would like to have an opportunity to read the prepared statement from Counsel and then determine if any future steps are interested or future action between us in that endeavor would make sense for your organization. So if you could give me a call at your earliest convenience I would appreciate it . . .

Guetter Aff., dkt. 51, exh. 1 at ¶ 12.

OPINION

I. Legal Standard

On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the burden of proof rests on the party asserting jurisdiction–here, Ganske–to make a prima facie showing of personal jurisdiction over the moving party. *Hyatt International Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). In deciding the motion, the court must take as true all well-pleaded facts alleged in the complaint and resolve "all disputes concerning relevant facts

presented in the record" in Ganske's favor. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (quoting *Nelson v. Park Industries, Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)); *see also Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (quoting same).

A federal court has personal jurisdiction over a non-consenting, nonresident defendant to the extent authorized by the law of the state in which that court sits, *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 664 (7th Cir. 1986), unless the federal statute at issue permits nationwide service or the defendant is not subject to personal jurisdiction in any state in the United States, *see* Fed. R. Civ. P. 4(k)(1) and *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201-02 (7th Cir. 1997). Because the parties do not assert that either of these exceptions applies, the question is whether Wisconsin law allows this court to exercise personal jurisdiction over Simon in this lawsuit.

Wisconsin breaks this question into two parts. First, the court is to determine whether Simon is within the reach of Wisconsin's long-arm statute, Wis. Stat. § 801.05. *Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996); *Kopke v. A. Hartrodt S.R.L.*, 245 Wis. 2d 396, 408-09, 629 N.W.2d 662, 667-68 (Wis. 2001). This statute enumerates several different grounds for personal jurisdiction, and it is to be construed liberally in favor of exercising jurisdiction. *Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.*, 18 F.3d 389, 391 (7th Cir. 1994); *Lincoln v. Seawright*, 104 Wis. 2d 4, 9, 310 N.W.2d 596, 599 (Wis. 1981). Ganske contends that personal jurisdiction over Simon is warranted under two different provisions of the long-arm statute: local act or omission, § 801.05(3) and local injury, foreign act, § 801.05(4)(a).

4

If the statutory requirements of the long-arm statute are met, then the court must determine whether the exercise of jurisdiction over Simon in this lawsuit comports with due process requirements of the Fourteenth Amendment of the United States Constitution. *Id.* Wisconsin's long-arm statute has been interpreted to confer jurisdiction "to the fullest extent allowed under the due process clause." *Daniel J. Hartwig Associates, Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir. 1990); *see also Felland v. Clifton*, 682 F.3d 665, 678 (7th Cir. 2012) ("[C]onstitutional and statutory questions tend to merge; compliance with the Wisconsin long-arm statute creates a presumption that constitutional due process is satisfied."); *Kopke*, 629 N.W.2d at 671 ("Compliance with the [long-arm] statute presumes that due process is met, subject to the objecting defendant's opportunity to rebut."). The crucial inquiry for specific jurisdiction under the due process clause is whether a defendant's contacts with the state are such that it should reasonably anticipate being haled into that state's courts. *International Medical Group, Inc. v. American Arbitration Association, Inc.*, 312 F.3d 833, 846 (7th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

After considering all of the parties' arguments, I am persuaded that this court has specific jurisdiction over Simon under both the due process clause and § 801.05(3) of the long-arm statute. Although I discuss both the state and federal requirements below, I start with the due process inquiry because it is the more complicated of the two. *See Felland*, 682 F.3d at 672 (doing same). In addition, the Seventh Circuit has held that "[o]nce the requirements of due process are satisfied, then there is little need to conduct an independent analysis under the specific terms of the Wisconsin long-arm statute itself because the statute has been interpreted to go to the lengths of due process." *Id.* at 678.

5

## II. Due Process Considerations

There are three essential requirements related to specific jurisdiction under the due process clause: (1) Simon must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, *Burger King*, 471 U.S. at 472; (2) the alleged injury must have arisen from or relate to Simon's forum-related activities, *id.*; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice, *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Felland*, 682 F.3d at 673. All three elements are satisfied in this case.

### A. Conduct purposefully directed at forum state

This inquiry depends in large part on the type of claim at issue. *Felland*, 682 F.3d at 674. When a plaintiff alleges intentional tortious conduct, personal jurisdiction generally turns on "whether the conduct underlying the claim[ ] was purposely directed at the forum state." *Tamburo*, 601 F.3d at 702. Interpreting the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), the court of appeals has identified three requirements for a plaintiff to show that the conduct was purposefully directed at the forum state: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 703; *see also Felland*, 682 F.3d at 674-75 (citing same).

Simon argues that his two brief telephone conversations and two messages do not demonstrate a "real relationship" with the state, "significant activities" in Wisconsin, or a "substantial connection" with Wisconsin. However, Ganske alleges that Simon intentionally

6

made false statements about the financial viability of Ganske, AG Consultants, and WSAG to people and businesses with whom Ganske had business relationships in Wisconsin, which resulted in damage to Ganske's reputation and business relationships in the state. If Ganske's allegations are true, then these misrepresentations constituted part of the wrongful conduct that forms the basis of his claims for unfair competition, intentional interference with contract, various types of misrepresentation and deceptive practices, defamation, and misappropriation, disclosure, and theft of trade secrets. *See, e.g., Felland*, 682 F.3d at 679 (Defendant's "Wisconsin-directed [mail and electronic] communications were intentional misrepresentations designed to deceive the Fellands" and "amount[ed] to a 'local act' causing 'injury to person or property within . . . this state.'").

In *Felland,* while the Wisconsin-based plaintiff and his wife were vacationing in Arizona, they visited an under-construction condominium project in Mexico. They ended up purchasing a condominium from a developer–defendant Clifton–based in part on Clifton's alleged misrepresentations made during the sales pitch in Mexico. The court held that although the initial fraud occurred in Mexico, Clifton's subsequent communications to the Fellands in Wisconsin assuring them that the project was adequately financed and on schedule were part of a comprehensive and ongoing scheme to perpetuate the initial fraud. *Felland*, 682 F.3d at 675. These communications sufficed to establish personal jurisdiction in Wisconsin over Clifton.

As with Clifton, so with Simon: even though Simon had only four brief contacts targeted at Wisconsin, they were part of the alleged overall plan to harm Ganske's reputation and business relationships both within and outside of Wisconsin.

7

**B. The injury arises out of Simon's contacts**

In the absence of Supreme Court guidance on this requirement, federal circuit courts disagree whether a defendant's contacts must be the factual cause of plaintiff's injury, the factual and proximate cause, or something in between. *Tamburo*, 601 F.3d at 708–09 (citing cases); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) (outlining the conflict). The Court of Appeals for the Seventh Circuit has suggested that a mere "but for" causal relationship is insufficient, *GCIU–Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1025 (7th Cir. 2009) (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 322 (3d Cir. 2007)), but it has declined to resolve the question definitively, *Felland*, 682 F.3d at 676-77; *Tamburo*, 601 F.3d at 709. Simon has not made any specific arguments with respect to this factor. In any event, I find that Ganske's allegations are sufficient to satisfy even the strictest application of the standard because at least some of Ganske's alleged injuries arise from and are related to Simon's contacts with Wisconsin for the reasons discussed above.

**C. Fair play and substantial justice**

"The final inquiry in the specific-jurisdiction analysis is whether the exercise of personal jurisdiction over an out-of-state defendant would offend traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 677 (citing *International Shoe*, 326 U.S. at 316). Factors relevant to this determination include the burden on defendant, Wisconsin's interest in adjudicating the dispute, plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and

the shared state interest in "furthering fundamental substantive social policies." *Id.* (quoting *Burger King*, 471 U.S. at 477).

"[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Felland*, 682 F.3d at 677. Simon contends that having to defend an action in Wisconsin rather than his home state of Oklahoma is unduly burdensome and that the third-party plaintiffs include multi-million dollar corporations that are in a much better position to participate in an out-of-state litigation. Although Simon faces some burden in being forced to defend an action in another state, out-of-state defendants always face such a burden. There is no suggestion that Simon's hardship would be any greater than that routinely tolerated by courts exercising specific jurisdiction against nonresidents. *Id.*

Accordingly, I do not find Simon's reasons to be compelling enough to render jurisdiction unreasonable in Wisconsin. Wisconsin has a strong interest in providing a forum for its residents to seek redress for wrongs inflicted by out-of-state actors and resulting injuries suffered within the state. *Id.* Further, the third-party complaint is only one part of an overarching litigation involving several other claims and counterclaims between many of the same parties, and Simon shares counsel with other plaintiffs, counter-defendants and third-party defendants. Therefore, judicial economy considerations weigh strongly in favor of keeping the claims against Simon in this court.

## III. Long-Arm Statute

Wis. Stat. § 801.05(3) allows a court to exercise personal jurisdiction over a defendant in "any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant." As with the due process inquiry, the analysis of this provision relies in large part on the type of claim at issue.

As with the due process inquiry, Simon argues that his four minimal contacts with Wisconsin are not significant enough to constitute an act or omission in Wisconsin for purposes of personal jurisdiction. This argument fails for the reasons previously stated. Ganske alleged that Simon's Wisconsin-directed communications were intentional misrepresentations designed to harm Ganske's reputation and business within the state. Accepting Ganske's allegations as true and drawing all inferences in favor of Ganske, I find that Simon's actions in Wisconsin constituted a key component of Ganske's claims, regardless how minimal they may seem. As a result, Simon's actions amount to a "local act" causing "injury to person or property within . . . this state." § 801.05(3).

Because Simon's actions in Wisconsin are sufficient to support personal jurisdiction under § 801.05(3), it is unnecessary to address Ganske's arguments that the third-party plaintiffs also have satisfied the requirements of § 801.05(4)(a). Accordingly, this court finds that it has jurisdiction over defendant Simon in this lawsuit.

ORDER

IT IS ORDERED that third party defendant Simon's motion to dismiss the claims against him for lack of personal jurisdiction, dkt. 43, is DENIED.

Entered this 7th day of March, 2019.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge