**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

EUROCHEM TRADING USA
CORPORATION, a Florida corporation,

      Plaintiff,

v.

W. KENT GANSKE, individually and d/b/a
and sole proprietor of AG CONSULTANTS,
and JULIE L. GANSKE,

      Defendants,

and

W. KENT GANSKE, Individually and d/b/a
AG CONSULTANTS, and JULIE L. GANSKE,

      Counter-Plaintiffs/Third-Party Plaintiffs,

and

WS AG CENTER, INC., a Wisconsin corporation,

      Third-Party Plaintiff,

v.

EUROCHEM TRADING USA CORPORATION,
a Florida corporation,

      Plaintiff/Counter-Defendant,

and

EUROCHEM GROUP AG, a foreign corporation,
SCOTT SIMON, individually, IVAN
BOASHERLIEV (aka Boasher), individually, BEN-
TREI FERTILIZER, LLC, an Oklahoma corporation,
and BEN-TREI, LTD., an Oklahoma corporation,

      Third-Party Defendants.

CASE NO. 3:18-cv-00016-slc

**COUNTER/THIRD-PARTY-**
**PLAINTIFFS' BRIEF IN SUPPORT OF**
**MOTION TO COMPEL**

1

Counter/Third-Party Plaintiffs W. Kent Ganske, Individually and d/b/a Aga Consultants, Julie L. Ganske and WS Ag Center, Inc. (hereinafter "Ganske Parties") hereby file this Motion to Compel in the above captioned matter and state the following in support thereof.

Ganske Parties bring a motion to compel responses to interrogatories and production of information on sales, customers, profits and related information from Counter/Third-Party Defendants[1]. The requested information pertains to various elements of the Lanham Act and related causes of action and the basis of Counter/Third-Party Defendants' potential liability, and thus is relevant to the case or would tend to lead to the discovery of relevant information.

## I.     PROCEDURAL BACKGROUND

Counter/Third-Party Defendants have "engaged in uncooperative conduct"[2] and not made a good faith attempt to answer Ganske Parties' First Set of Interrogatories and Request for Production.  On April 19, 2019, Ganske Parties served their First Set of Interrogatories and Requests for Production of Documents on Counter/Third-Party Defendants, which consisted of twelve (12) interrogatories and (51) requests for production. (**Ex. 1**).  On May 20, 2019, Counter/Third-Party Defendants asked for a two (2) week extension, which was granted. (**Ex. 2**). On June 4, 2019, Counter/Third-Party Defendants served their responses to Ganske Parties' interrogatories and requests for production. (See **Ex. 3**). These responses consisted of objections to five (5) of the interrogatories and thirty (30) of the requests to produce; but, few substantive responses or documents were provided[3].   Counter/Third-Party Defendants' objections all

---

[1] The term Third Party Defendants, as used herein, does not include EuroChem Group, AG as that entity has not been served and has not appeared in this case.  It does include EuroChem Trading USA Corporation, Scott Simon, Ivan Boasherliev (aka Boasher), Ben-Trei Fertilizer, LLC and Ben-Trei, Ltd.

[2] *Grasshopper Motorcycles, Ltd. v. Rivera*, No. 14-cv-320-slc, 2014 U.S. Dist. LEXIS 162695, at *3-7 (W.D. Wis. Nov. 13, 2014). (**Ex. 18**).

[3] Attorney Wirth produced only 8 of his own outgoing emails to third parties (Attorneys Miesen and Herrick) out of 25: 3/15/18; 4/2/18; 4/10/18; 4/10/18; 4/17/18; 4/19/18; 5/15/18; 5/7/19. The remaining 17 were not produced <u>at the time</u>, nor did he do a privilege log or provide other notice to Ganske Parties that the documents were being withheld. (**Ex. 4**). Hiding evidence is sanctionable behavior.  Fed. R. Civ. 37(c)(1).

included the boilerplate objection that the request was "neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence" in addition to being "overly broad and unduly burdensome."  Ganske Parties' counsel wrote a letter to opposing counsel on June 19, 2019 outlining key deficiencies of the responses and indicating that any time frame for production of documents would be limited to the last 5 years, as well as clarifying certain terms Counter/Third-Party Defendants found confusing, such as "Product". (**Ex. 5**)[4]. Counsel for Ganske Parties then had a phone conference with opposing counsel on June 20, 2019 (**Ex. 6**, Certification), attempting to once more work with Counter/Third-Party Defendants. Counter/Third-Party Defendants again asked for more time to answer (the request to June 25, 2019) which <u>again</u> was granted.  It was obvious from the conversation that Counter/Third-Party Defendants' counsel had not bothered to consider neither the Lanham Act nor the other Ganske Parties' Counterclaim in answering the discovery.

In the first answer, Counter/Third-Party Defendants provided eight (8) outgoing emails from Attorney Wirth to Attorneys Jonathan Miesen or John Herrick with not one incoming response.  Attorney Wirth was specifically asked about the lack of completeness of the email thread during the phone conference.  Attorney Wirth indicated he would look, but did <u>not</u> think that any further documents (emails) existed as he thought they called in response.  Given Attorney Wirth's response, on June 20, 2019 and June 21, 2019, respectively, Ganske Parties sent a subpoena to produce to Attorney Jonathan Miesen (**Ex. 7**) and then to Attorney John Herrick (**Ex. 8**), copying Attorney Wirth.  Only then, and perhaps wishing to avoid the proverbial "getting your hand caught in the cookie jar", did attorney Wirth then decide to provide

---

[4] This court has found a five-year period to be reasonable and not burdensome in other cases. *Grasshopper Motorcycles, Ltd. v. Rivera*, No. 14-cv-320-slc, 2014 U.S. Dist. LEXIS 162695, at *3-7 (W.D. Wis. Nov. 13, 2014). (**Ex. 18**).

the additional email chains with Attorneys Herrick and Miesen[5] on June 25, 2019 at 6:03 p.m. and an additional 17 emails of his own! (**Ex. 9,** ECTUS000558-000662).  It is worth noting that several of these emails are within the period of time previously produced and that most are email threads back and forth.   Many of these emails are critical of and/or personally insulting of Ganske Parties' counsel ("Bill Howard is insufferable" [**Ex. 9**, ECTUS000627] and "He's an idiot" [**Ex. 9**, ECTUS000629]); Kent Ganske ("is a tub of goo" [**Ex. 9**, ECTUS000629] and opposing counsel are "dirtballs" [Ex. 8, ECTUS000656]); and the Court ("any ruling on your MSJ?" "Not yet.  Not sure what is taking so long.  It should be a no-brainer." "Agreed." [**Ex. 9**, ECTUS000681]).   Given the outrageous and uncivil content of these emails, including both sending and receiving of significant multi-party attachments[6], it is doubtful that Mr. Wirth forgot about the existence of such emails.  Indeed, he provided ECTUS000009 dated 3/15/18 at 12:23 p.m. in the first batch while <u>omitting</u> the response received at 1:26 p.m. the very same date. [ECTUS000627].  Thus, this court should likely conclude that these emails were intentionally withheld until the subpoenas to produce were sent.

Additionally, Attorney Wirth provided a Privilege Log dated June 25, 2019 (**Ex. 10**) claiming privilege on the Avant Report that Simon cited in his notes used when speaking to alleged creditors of WSAG, Kent Ganske and Ag Consultants.  The log also included the August 1, 2018 chart of Kent and Julie Ganske's assets/liens, even though Attorney Wirth disclosed that document to Attorney Herrick on August 8, 2018 via email.  Again, this chart was <u>not</u> included

---

[5] Attorney Wirth suddenly was able to locate and provide an additional 17 new emails, including many with Attorney Jonathan Miesen, counsel for plaintiff in *Winfield Solutions, LLC v Ganske, et al*, case number 17-cv-942: 3/2/18; 5/21/18; 5/23/18; 6/8/18; 6/27/18; 7/27/18 (letter); 7/27/18; 8/8/18; 8/8/18 to Herrick with attached chart of asset liens of Kent and Julie Ganske dated 3/13/17; four separate emails of 1/15/19; two separate emails of 3/15/19; and two separate emails of 4/9/19. No attachments were provided even though same were referenced in the emails.
[6] Examples of attachments which are not produced still include: ECTUS000594, which suggests additional unproduced emails by the phrase "this should be the last email"; ECTUS000595; ECTUS000597; ECTUS000600 "attached chart", which appears to be the very chart listed in the privilege log dated June 25, 2019 (**Ex. 9**); ECTUS00617 "I saw your status report"; and ECTUS000625 "Depos".

in the first Privilege Log dated June 3, 2019. (**Ex. 11**), meaning Attorney Wirth withheld it without notice to the Ganske Parties at the time of Counter/Third-Party Defendants' initial disclosures.  Only when he was compelled to produce the email containing the attachments did he suddenly add the chart to the privilege log.

## II.   ARGUMENT

Ganske Parties move under Fed. R. Civ. P. 37 and 26 to compel Counter/Third-Party Defendants to provide information and documents regarding: (1) Counter/Third-Party Defendants' sales and profits which are necessary for Ganske Parties to calculate damages; and (2) the basis for Counter/Third-Party Defendants' unfair competition and false advertising claim and related allegations.[7] Counter/Third-Party Defendants continue to ignore their obligation to produce sales and profits information that is plainly discoverable and has instead held that information hostage in an effort to obfuscate. Ganske Parties move to compel Counter/Third-Party Defendants to provide information regarding Counter/Third-Party Defendants' finances, sales, merger documents with a competitor, tariffs and information regarding certain employees (both of which are Parties).

"The Federal Rules of Civil Procedure contemplate 'liberal discovery,' and 'relevancy' under Rule 26 is extremely broad. Rule 26 allows parties to obtain discovery 'regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...' Fed. R. Civ. P. 26(b)(l). A discovery request is relevant if there is any chance that the information sought may be relevant to the subject matter of the action." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). As such, "[t]he burden rests upon the objecting party to

---

[7] Counsel for Ganske Parties hereby certifies, pursuant to Fed. R. Civ. P. 37(a)(1) and Local Civil Rule 37, that after multiple consultations by telephone and email to make good faith attempts to resolve differences, the parties are unable to reach an accord. The efforts made by Ganske Parties' counsel to engage in consultation, and the date, time and the names of all participating parties, are described herein and set forth in the Certification of William D. Howard in Support of Motion to Compel. (**Ex. 6**).

show why a particular discovery request is improper." *Wilstein v. San Tropai Condo.* Master Ass'n, 189 F.R.D. 371 (N.D. Ill. 1999).   Counter/Third-Party Defendants have not met that burden with their reflexive invocation of the baseless and here abused litany that the requested discovery is: not reasonably calculated to lead to the discovery of admissible evidence, overly broad, unduly burdensome, etc.   The result of Counter/Third-Party Defendants' actions are merely to delay discovery and the prosecution of the Ganske Parties' case by weeks, if not months.   This was clearly Counter/Third-Party Defendants intent as they requested and were given an additional two weeks only to provide the inadequate responses, and then to request more time as a result of the confirmation process required by the court rules, during which the Ganske Parties patiently waited, only to find out that Counter/Third-Party Defendants provided little additional discovery.

Further aggravating an already insufficient response, Counter/Third-Party Defendants fail to cite a basis for their boilerplate objections, in further violation of the Federal Rules of Civil Procedure, which require parties to *specifically* state the grounds and legal basis for objecting to discovery requests. See Fed. R. Civ. Proc. 33 and 34. Therefore, in its response to the document production and interrogatory requests served upon it, Counter/Third-Party Defendants did not meet their burden of demonstrating a valid basis for withholding the documents or answers. Therefore, Ganske Parties request that answers and documents be provided in the next seven (7) days and that discovery be extended for an additional 60 days[8] after the receipt of discovery to deal with Counter/Third-Party Defendants' intentional delay.

A.   THE CUSTOMERS TO WHOM COUNTER/THIRD-PARTY DEFENDANTS MADE FALSE STATEMENTS

Ganske Parties sought the following interrogatories:

---

[8] Such extension will not delay trial, if granted.

1.   Identify any person to whom you sold or delivered Product at any time from 2014 to the present in the Midwest.

**RESPONSE:  ECTUS and Third-Party Defendants object to Interrogatory No. 1 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence.**

The above interrogatory seeks discoverable information that is a basis for liability under the Lanham Act.  Ganske Parties are entitled to know who ECTUS and Ben-Trei are selling to in order to determine if they have overlapping clients or if ECTUS/Ben-Trei have acquired customers of Ganske Parties as a result of the factual misstatements made by Attorney Wirth, Mr. Simon and/or Mr. Chlup.  This information should be provided.

2.   Identify any Customer, grower or Grower Representative with whom you communicated about WSAG and/or Kent Ganske from 2014 to the present.

Subject to objection, Counsel Counter/Third-Party Defendants answered with the following:

**RESPONSE:  ECTUS and Third-Party Defendants object to Interrogatory No. 2 on the basis that it is vague and unclear because "Customer," "grower," and "Grower Representative" are not defined anywhere in the Defendants/Third-Party Plaintiffs' discovery requests. ECTUS and Third-Party Defendants are unsure if "Customer" means customers of ECTUS and Third-Party Defendants or customers of Kent Ganske d/b/a AG Consultants or customers of WS AG Center, Inc. ("WSAG"). ECTUS and Third-Party Defendants are also unsure of the meaning of "grower" and "Grower Representative." Notwithstanding and without waiving the objection, ECTUS and Third-Party Defendants communicated with the following customers of Kent Ganske d/b/a AG Consultants or WSAG about WSAG and/or Kent Ganske: United Cooperative, Landmark Services Cooperative, Quality Liquid Feeds, White Front Feed & Seed, Allied Cooperative.**

When questioned, Counsel Wirth indicated that this statement included customers and vendors of Ganske Parties. Ganske Parties know that this is incorrect, that they contacted more than that group.  Ganske Parties are entitled to a full and complete answer.

7

Interrogatory number 3 stated as follows:

> 3.    Please identify what employee or agents made phone calls or otherwise communicated regarding WSAG and/or any Kent Ganske related entity to any person and provide the date(s), content, and subject matter of such communication(s).
>
> **RESPONSE: Scott Simon, Richard Chlup and Steven Wirth. November 30, 2017, December 7, 2017, December 14, 2017. The subject matter and content of the communications was that ECTUS was a creditor of WSAG and Kent Ganske d/b/a AG Consultants, that ECTUS was considering initiating an involuntary bankruptcy case against WSAG and possibly Kent Ganske, explaining what an involuntary bankruptcy case is and asking if the company was interested in joining ECTUS as a petitioning creditor in an involuntary bankruptcy case.**

This response is inadequate. Among other things, Counter/Third-Party Defendants never identify who made which calls. They only identify who called generally.  Ganske Parties are entitled to know who called which customer on what date and what was said specifically.  For instance, Counter/Third-Party Defendants say Chlup made calls (where?) but fails to disclose who he called, when he called, or what the substance of those conversations were.

Interrogatory number 4 stated as follows:

> 4.    Identify every Person You called or communicated with regarding the filing of an involuntary bankruptcy proceeding relating to Kent Ganske, WS Ag, or Ag Consultants and provide the date(s), content and any prepared scripts or memos, and/or written notes or memoranda regarding such contacts.
>
> **RESPONSE: See responses to Interrogatory Nos. 2 and 3. Additionally, the following persons were contacted: Winfield Solutions, LLC, Rosen's, Inc., The Anderson's, Inc., CGB Enterprises, Inc., Trammo and Gundrum Bros. Farm Supply, Inc.**

While Counter/Third-Party Defendants acknowledge that they called people with regard to involuntary bankruptcy, they have not produced any notes.  For instance, Attorney Wirth had numerous conversations with Attorneys Miesen and Herrick. Ganske Parties requested and want

his notes or memorandums from those conversations, as well as notes and memorandums of all other conversations.

Ganske Parties sought the following requests to produce that dealt with communications with growers/customers:

> 14. All communications with any customer, grower or Grower Representative in the Midwest regarding Your Products.
>
> **RESPONSE: ECTUS and Third-Party Defendants object to Request for Production No. 14 on the basis that it is vague and unclear because "Customer," "grower," and "Grower Representative" are not defined anywhere in the Defendants/Third-Party Plaintiffs discovery requests. ECTUS and Third-Party Defendants are unsure if "Customer" means customers of ECTUS and Third-Party Defendants or customers of Kent Ganske d/b/a AG Consultants or customers of WSAG. ECTUS and Third-Party Defendants are also unsure of the meaning of "grower" and "Grower Representative." ECTUS and Third-Party Defendants also object to Request for Production No. 14 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence. ECTUS and Third-Party Defendants also object to Request for Production No. 14 as overly broad and unduly burdensome because there is no time frame specified in the Request.**

> 15. All communications with any customer, grower or Grower Representative regarding WSAG, Ag Consultants and/or Kent Ganske.
>
> 16. All communications to third parties, including but not limited to, customers or potential customers, regarding WSAG, Ag Consultants and/or Kent Ganske.

Counter/Third-Party Defendants' response to requests 15 and 16 was as follows:

> **RESPONSE: ECTUS and Third-Party Defendants object to Request for Production No. 15 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence. ECTUS and Third-Party Defendants also object to Request for Production No. 15 as overly broad and unduly burdensome because there is no time frame specified in the Request. Notwithstanding and without waiving the objections, documents responsive to this Request are being produced contemporaneously with these Responses.**

36.     Any and all correspondence between You and any other third party pertaining to plaintiff, or plaintiff's customers, representatives, or other parties with a business relationship or potential business relation with plaintiff.

**RESPONSE: ECTUS and Third-Party Defendants object to Request for Production No. 36 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the objection, Ivan Boasher and Scott Simon have no documents responsive to this Request.**

Counter/Third-Party Defendants objected to these questions citing boiler plate objections. The timeframe objection was cured. "Growers", "Customers" or "Potential Customers" are nouns with normal definitions. Ben-Trei and WSAG are competitors in the marketplace. The Ganske Parties want to know who (whether they are customers of the Ganske Parties or Counter/Third-Party Defendants), the Counter/Third-Party Defendants are communicating with regarding Ganske Parties. These requests are fair and should be answered immediately. These requests touch on likely misstatements made to gain unfair advantage and they will be the result in some cases of misappropriated confidential information.

Ganske Parties also sought these requests to produce:

17.     All documents and communications related to a proposed or contemplated WSAG, Ag Consultants and/or Kent Ganske involuntary bankruptcy, including but not limited to the prepared statement Scott Simon was planning to read.

**RESPONSE:   Documents responsive to this Request are being produced contemporaneously with these Responses.**

32.     All communications, memos, etc. involving Kent Ganske and his companies and involuntary bankruptcy.

**RESPONSE:  See responses to Requests for Production Nos. 15, 16, and 17.**

Answers to these two requests are incomplete. Again, the requests are fair, and they should be

answered fully and completely at this time.  Again, these requests touch on likely misstatements made to gain unfair advantage and they will be the result in some cases of misappropriated confidential information.

B.    GANSKE PARTIES' INJURY RESULTING FROM MISSTATEMENTS, SALES AND FINANCIAL DOCUMENTS

Interrogatory number 12 to Counter/Third-Party Defendants stated as follows:

12.    Please identify Your net income from 2014 inclusive to the present.   This identification should include the following:

       a.      The amount of the Net Income and the year in which it was received;
       b.      Each person who was involved in the calculation of the Net Income;
       c.      The gross income used to calculate Net Profits;
       d.      The deductible costs used to calculate Net Profits;
       e.      The method used to calculate Net Profits;
       f.      The persons involved in the calculation of the Net Income; and
       g.      All documents used to calculate Net Profits.

**RESPONSE: ECTUS and Third-Party Defendants object to Interrogatory No. 12 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence.**

Requests for Production to Counter/Third-Party Defendants included the following:

1.    Your unaudited financial statements from January 1, 2014 to the present, including, without limitation, financial statements for each year or, absent a full year, every month in that time period.

**RESPONSE:  ECTUS and Third-Party Defendants object to Request for Production No. 1 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the objection, financial statements for EuroChem Group AG, to include ECTUS, and Ben-Trei Fertilizer Company, LLC and Ben-Trei, Ltd. may be downloaded from the website: http://www.eurochemgroup.com/en/downloadcentre/.**

2.    Your general ledger or other financial report that provides transaction detail for each and every category of revenue, expense, asset or liability

reflected in each financial statement responsive to request for production number 1.

3.      Supporting documents from your accounting records for each and every entry in each and every general ledger or other financial report responsive to request for production No. 2.

Counter/Third-Party Defendants' response to requests 2 and 3 was as follows:

**ECTUS and Third-Party Defendants object to Request for Production No. 2 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence.**

4.      All documents, including invoices and statements, reflecting each Product that You sold, directly or indirectly, to third parties located in the Midwest, including such documents as would be sufficient to show, customer name, product name, quantity, price, whether such sale was wholesale or retail and date of sale and delivery to the Customer.

**RESPONSE:   ECTUS and Third-Party Defendants object to Request for Production No. 4 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence. ECTUS and Third-Party Defendants also object to Request for Production No. 4 as overly broad and unduly burdensome because there is no time frame specified in the Request. Finally, ECTUS and Third-Party Defendants object to Request No. 4 as vague and unclear because "Product" is defined in Defendants/Third-Party Defendants discovery as "agricultural products that were purchased or sold between WSAG and ECTUS." Under this definition, ECTUS and Third-Party Defendants would not have sold Products to third parties.**

5.      All documents that concern, relate, or in any way refer to the amount of the Income derived from the sale of Products in the Midwest.

**RESPONSE:   ECTUS and Third-Party Defendants object to Request for Production No. 5 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence. ECTUS and Third-Party Defendants also object to Request for Production No. 5 as overly broad and unduly burdensome because there is no time frame specified in the Request.**

6.      All documents that concern, relate, or in any refer to the amount of Net Income You received from the sale of Products in the Midwest from 2010 to the present.

**RESPONSE:   ECTUS and Third-Party Defendants object to Request for Production No. 6 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence.**

8.  Monthly, quarterly, and yearly sales summaries (units and dollars) for sales of Products sold by You (including customer names and contract information) in the Midwest.

9.  Monthly, quarterly, and yearly cost of products sold or gross margin reports related to sales of the Product sold by You in the Midwest.

10. Monthly, quarterly, and yearly cost of operating expenses or operating margin reports (or alternatively, contribution margin reports) related to sales of the Products sold by You in the Midwest.

12. Documents such as brochures, presentations, spec sheets, and other marketing materials that discuss the features, benefits, and advantages of the Products sold by You.

Counter/Third-Party Defendants' response to requests 8, 9, 10 and 12 was as follows:

**RESPONSE:   ECTUS and Third-Party Defendants object to Request for Production No. 5 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence. ECTUS and Third-Party Defendants also object to Request for Production No. 5 as overly broad and unduly burdensome because there is no time frame specified in the Request.**

11. Business, strategic, and/or marketing plans relating to the Products sold by You in the Midwest from 2014 to present.

**RESPONS:   ECTUS and Third-Party Defendants object to Request for Production No. 6 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence.**

36. A list of Your top 40 agricultural customers in the Midwest from 2015 to the present.

37. A list of Your top 40 agricultural venders in the Midwest from 2015 to the present.

38. Lists of all current and former agricultural clients or customers in the

Midwest from 2014 to the present.

Counter/Third-Party Defendants' response to requests 36, 37 and 38 was as follows:

> **RESPONSE: ECTUS and Third-Party Defendants object to Request for Production No. 36 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the objection, Ivan Boasher and Scott Simon have no documents responsive to this Request.**

40. Copies of all documents reflecting, referring, or relating to forecasts, projections, estimations, or other calculations of future earnings, profits, revenues, or costs prepared in the last five (5) years.

41. Copies of all documents reflecting, referring, or relating to analyses or studies of the market in which defendants expected to generate sales, including but not limited to document relating to defendants' market share, consumer demand, and defendants' competition.

42. Any and all records, invoices and computer runs containing information regarding Defendants' total sales to its specific customers, involving fertilizer sales.

43. All financial statements delivered to any financial institution or credit enterprise from 2015 to the present.

Counter/Third-Party Defendants' response to requests 40, 41, 42 and 43 was as follows:

> **RESPONSE: ECTUS and Third-Party Defendants object to Request for Production No. 40 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence.**

One of the forms of relief that Ganske Parties are entitled to under the Lanham Act are the "defendants' profits." Therefore, Ganske Parties are entitled to take discovery to gather evidence to prove this remedy. At issue is whether Ganske Parties can conduct discovery regarding their damages under the Lanham Act. The range of discovery allowable is wide, since district courts have considerable discretion in fashioning a remedy for a Lanham Act violation, subject to the principles of equity. 15 U.S.C. § 1117(a); *Roulo v. Russ Berrie & Co., Inc.,* 886 F.2d 931, 941 (7th Cir. 1989). Under the Lanham Act, a plaintiff may can recover: (1)

defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action. *Sands, Taylor & Wood v Quaker Oats*, 34 F. 3d 1340, 1347 (7th Cir. 1994); 15 U.S.C. §1117(a); *Merck Eprova AG v Gnosis S.p.A.*, 760 F 3d 247, 261 (2d Cir. 2014); and *Mobius Management Systems, Inc. v Fourth Dimension Software, Inc.*, 880 F.Supp.1005, 1025-1026 (S.D.N.Y. 1994) (actual damages may be enhanced to deter further willful violations). A court is free to award enhanced amounts of the plaintiff's monetary damages or the defendant's profits, with the former being capped at three times the actual amount of quantifiable damages, and the latter not capped at all. 11 U. S. C. §1117(a). However, with respect to these two types of enhancements, the statue states that "Such sum in either of the above circumstances shall constitute compensation and not a penalty". *Id.* The same factors that determine an enhancement of Ganske Parties' lost profits apply to an enhancement of the amount awarded based on Counter-Third-Party Defendants' profits. The principles of equity dictate that that an award of profits should be enhanced to best reflect the intangible benefits that accrue to a defendant as a result of its false statements. Factors such as the usurpation of the plaintiff's market share should be considered. *Merck Eprova Ag v Gnosis S.p.A.*, 901 F. Supp. 2d 436, 460 (S.D. N.Y. 2012). An award that considers *only sales made* during the period in which the defendant falsely advertised does not adequately compensate a plaintiff for losses incurred after that window has closed. Enhancement is all the more appropriate because it is impossible to return the parties to their respective positions prior to defendant's false advertising campaign. *Id.* An award of defendant's profits alone cannot fully capture a plaintiff's loss of market share, customer loyalty, and potential customers as a result of defendant's actions. *Id.*

An important case similar to Ganske Parties' current situation is *Finnsugar Bioproducts v. Amalgamated Sugar Co.,* 2002 U.S. Dist. LEXIS 18794, 3-4 (D. Ill. 2002) (**Ex. 12**), in which

the Court granted a motion to compel profit information. In granting the motion to compel, the Court stated that because Counterclaim Plaintiffs Lanham Act claim was viable, the request for profit information from counterclaim Defendant was relevant and must be produced.

## C.    COUNTER/THIRD-PARTY DEFENDANTS' MOTIVE – TARIFFS

Interrogatory number 5 stated as follows:

> 5.    Identify the person(s) with the most knowledge regarding negotiating the antidumping duties and compliance with the procedures put in place with the US Department of Commerce and the US international Trade Commission to assure Your pricing was fair.
>
> **RESPONSE: ECTUS and Third-Party Defendants object to Interrogatory No. 5 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence.**

Requests for Production to Counter/Third-Party Defendants included the following:

> 19.    All documents relating to the procedures in place with the US Department of Commerce and/or US International Trade Commission with respect to the duties and/or tariffs.
>
> 20.    All documentation provided to the US Department of Commerce and/or US International Trade Commission to show that Your prices were fair from 2014 to present.
>
> 21.    All documentation provided to the US Department of Commerce and/or US International Trade Commission to not be subject to the antidumping duty and/or tariff from 2014 to present.
>
> 22.    All documents provided to the US Department of Commerce and/or US International Trade Commission from 2014 to present for your annual antidumping review.
>
> 23.    All documents and communications relating to Your efforts to comply with the procedures You initiated with US Department of Commerce and/or US International Trade Commission.
>
> 45.    All complaints, requests for exemptions, inquiries and correspondence with the US Department of Commerce and/or US International Trade Commission from 2014 to the present.

Counter/Third-Party Defendants' response to requests 19, 20, 21, 22, 23 and 45 was as follows:

> **RESPONSE:  ECTUS and Third-Party Defendants object to Request for Production No. 19 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence.**

Ganske Parties are entitled to tariff information to show the Counter/Third-Party Defendants' motive in engaging in anti-competitive behavior, which is an element of Ganske Parties' Lanham Act and other claims.  So far Counter/Third-Party Defendants have maintained that it is not subject to tariffs even through testimony in the arbitration confirms that a key employee tracks information for tariff compliance.  (**Ex. 13**, Arb. Tr. 9/6/18, 256:22-24[9], Testimony Lisa Smith, ECTUS' Financial Manager).  Such information is relevant to the Ganske Parties' claims and should be produced.

D.      COUNTER/THIRD-PARTY DEFENDANTS' EMPLOYEES

Ganske Parties sought the following requests to produce that dealt with employees:

> 47.     The full and complete personnel files, including wage records, and any contractual agreements including non-competes, confidentiality agreements, and/or severance agreements of the following current or former employees/contractors: Ivan Boascher and Scott Simon.
>
> **RESPONSE: ECTUS and Third-Party Defendants object to Request for Production No. 19 as neither relevant to the subject matter of any of the claims asserted by Defendants/Third-Party Plaintiffs in this action nor reasonably calculated to lead to the discovery of admissible evidence.**
>
> 48.     Any and all statements and/or reports made by the following current or former employees/contractors: Ivan Boascher and Scott Simon.
>
> **RESPONSE: ECTUS and Third-Party Defendants object to Request for Production No. 48 on the basis that the Request is vague and overly broad. The Request does not contain a time frame, nor does it state the subject matter of the requested statements and reports.**

---

[9] Q. "Were you involved in any compliance reporting to the Federal Government for the purpose of tariffs?" A. "Yes".

These files are relevant in that they will show what times these employees are acting on behalf of which entity, whether they were sanctioned for their behavior in relation to the Ganske Parties, and any terms of any severance agreement for Ivan Boasher with respect to his testimony.

An example of why this is important is found in Scott Simon's representations. On January 25, 2018 (**Ex. 14,** ECTUS000007), Mr. Simon sent an email to Randy Ledger at United Suppliers.  His email address was ssimon@bentrei.com, while his signature line stated that he was the CFO of North America EuroChem Trading USA/Ben Trei, Ltd., while the "Eldon Stutsman Contract Document" dated January 17, 2018 (**Ex. 15,** ECTUS000003) stated that he was the CFO of EuroChem Trading USA.  Yet, on that same date, he also sent an email to jhouse@stutsman.com indicating that he was the CFO, EuroChem North America (this is a non-entity) (**Ex. 16,** ECTUS000001). These three (3) different documents have different representations as to who he was acting on behalf of.  Ganske Parties are entitled to know who his employer was at which time periods, and who exactly he was acting on behalf of.  Does Mr. Simon receive wages from all three companies, does he have different agreements with them, what exactly is his role? Mr. Simon is a defendant, we are entitled to his personnel file and personnel records to determine what that is instead of just relying on Counter/Third-Party Defendants' word.  Similar issues exist for the Ivan Boasher employee file which was also requested, and all should be produced.

E.    INSURANCE

Ganske Parties sought the following requests to produce that dealt with insurance:

> 50.    All insurance policies providing coverage for this claim, whether primary, excess and/or umbrella, specifying the name of the insurer, the policy number, all coverage limits and any reservation of rights correspondence.

**RESPONSE: Documents responsive to this Request are being produced contemporaneously with these Responses.**

Counter/Third-Party Defendants did not provide the entire policy, but rather a schedule with several endorsements.   Ganske Parties are entitled to a certified copy of <u>all</u> insurance policies, including umbrella coverage(s), if any, riders and/or wraps, as requested and required.

F.   AVANT REPORT

Request for Production number 30 sought the following:

> 29.    All documents relied upon in Your determination that Kent Ganske, WSAG and/or Ag Consultants was a credit risk.
>
> **RESPONSE: ECTUS relied upon the documents provided by Kent Ganske to ECTUS in 2017 including the Prepay Balance by Customer – Spreadsheet, documents given to Avant Advisory Group by Kent Ganske, his employees and accountants and the final report prepared by Avant Advisory Group. The Prepay Balance by Customer – Spreadsheet and documents given to Avant Advisory Group by Kent Ganske, his employees and accountants are already within the possession of Defendants/Third-Party Plaintiffs. ECTUS and Third-Party Defendants object to providing the final report prepared by Avant Advisory Group pursuant to the attorney work product privilege because the report was prepared at the direction of ECTUS's and Third-Party Defendants' attorney in anticipation of litigation and therefore will not be produced.**

Counter/Third-Party Defendants have claimed privilege to documents produced designated ECTUS000524-557, the Avant Advisory Group Final Report authored by Ms. Aubort, citing "Attorney-Client privilege; Work Product Doctrine".  (**Ex. 10** and **11**).

This report was prepared May 31, 2017[10] according to the privilege logs. (**Id**).  The work done by Aubort for Avant long predated both arbitration and the instant lawsuit and thus was not done in anticipation of litigation.  At the time she visited the Ganske Parties' locations, Marc Hechler and Ivan Boasher were present and Mr. Hechler was promising that the parties would

---

[10] Arbitration was commenced on July 14, 2017, two months after production of the report and the instant lawsuit was not filed until January 8, 2018. Further, it was contemporaneous with the Marc Hechler promise to work with WSAG on a consignment basis. Thus, the work was not done in anticipation of litigation.

create a cooperative "Master Sales Agreement" during this time period. (**Ex. 19**). Thus, the reason for her visit and the investigation are disputed. Consequently, the Avant report should not be protected as work product. Even if the report was work product, it can be discovered. *In the United States District Court for the Western District of Wisconsin, Paul Barrows v. Daubert Law Firm LLC, et al.* Order 06-c-409-c, citing *Mattenson v. Baxter Healthcare Corp., 438 F.3d 763, 768-69 (7th Cir. 2006).* The report will <u>not</u> contain the "mental impressions, opinions, or legal theories of an attorney concerning the litigation." She wrote it, he didn't. See *Id.*

Aubort's work is further discoverable because she has already provided testimony in this case by way of her affidavit at Document #42. Her affidavit was submitted by Attorney Wirth for the court's consideration in Plaintiff's Motion for Issuance of Pre-Judgment Writ of Attachment (Dkt. 40). Counter/Third-Party Defendants have attempted to utilize her opinions on various occasions. <u>Now</u> they don't want to give the Ganske Parties the report. Counsel cannot have it both ways. A person giving "expert testimony in the case," must disclose his or her report pursuant to Fed. R. Civ. P. 26(a)(2)(B). Aubort's affidavit purports that she arguably is an expert, trained to do investigations and make findings, and issue opinions (that the Ganske Parties co-mingled assets, etc.).

The "prepared transcript" prepared for and to be read by Scott Simon and his notes used as speaking points reference the Avant report. (Ex. 8, ECTUS000523). The report document will go, in part, to the truthfulness of Simon's statements. Also, it will be relevant and pertain to Ganske Parties' counts 2 and 3, violation of federal and state trade secrets acts and count 10, theft of confidential information. There is no other source available to Ganske Parties to obtain this information and thus it should be produced.

G.    FEES AND COSTS

In this case, the Counter/Third-Party Defendants' conduct is both evasive and incomplete such that reasonable costs and fees under Fed. R. Civ. P. 37(a)(5)(A) will be appropriate should the Court grant the motion.

As stated in *Ravenwood-Alexander v. Beahm*, No. 17-cv-7-pp, 2018 U.S. Dist. LEXIS 8368, at *6-7 (E.D. Wis. Jan. 18, 2018): "The rule does, however, require the court to order the non-moving party to pay reasonable costs and fees if that party turned over the discovery *after* the movant filed his motion. Fed. R. Civ. P. 37(a)(5)(A) states that "[i]f . . . the disclosure or requested discovery is provided after the motion was filed — the court must, [*7] after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, . . . to pay the movant's reasonable expenses incurred in making the motion[.]" (**Ex. 17**).

WHEREFORE, Counter/Third-Party Plaintiffs, W. Kent Ganske, Individually and d/b/a Ag Consultants, Julie L. Ganske and WS Ag Center, Inc. respectfully request this Honorable Court enter an Order compelling Counter/Third-Party Defendants' to produce supplemental discovery answers and document production, as well as award Counter/Third-Party Plaintiffs costs, attorney fees, sanctions and any other relief the court deems just and proper, including an extension of discovery deadlines up to the eve of trial to adjust for Counter/Third-Party Defendants' intentional five week delay at this point.

Respectfully submitted,

Dated: June 27, 2019

/s/_____
William D. Howard (MI Bar No. P36886)
HOWARD LAW GROUP
Attorneys for Defendants
25 Ionia Avenue SW, Suite 230
Grand Rapids, MI 49503
616-235-6000; Fax (616) 235-6061
bhoward@howardlawgr.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Counter/Third-Party

Plaintiffs' Brief in Support of Motion to Compel was electronically filed on today's date with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

following:

David E. Otero, Esq.
Attorneys for Plaintiff
50 North Laura Street, Suite 3100
Jacksonville, FL  32202-3646
david.otero@akerman.com

and

Steven R. Wirth, Esq.
Attorneys for Plaintiff
401 E. Jackson Street, Suite 1700
Tampa, FL  33602-5250
steven.wirth@akerman.com

on this the 27th day of June, 2019.

/s/_____
William D. Howard/Attorney