IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EUROCHEM TRADING USA CORPORATION,

                      Plaintiff,

   v.

W. KENT GANSKE, individually and
d/b/a and sole proprietor of AG CONSULTANTS,
and JULIE L. GANSKE,

                      Defendants.

W. KENT GANSKE, individually and d/b/a AG
CONSULTANTS, and JULIE GANSKE,

    Counter-Plaintiffs and Third-Party Plaintiffs,
and

WS AG CENTER, INC.,

                      Third-Party Plaintiffs,

   v.

EUROCHEM TRADING USA CORPORATION,

                      Plaintiff and Counter-Defendant,
and

EUROCHEM GROUP AG, SCOTT SIMON, IVAN
BOASHERLIEV, BENTREI FERTILIZER, LLC
and BEN-TREI, LTD.,

                      Third-Party Defendants.

OPINION AND ORDER

18-cv-16-slc

---

In this lawsuit brought under the court's diversity jurisdiction, plaintiff EuroChem Trading USA Corporation ("ECTUS") seeks to collect more than $14 million in unpaid invoices for agricultural product that it delivered to WSAG Center, Inc. ("WSAG"), an agri-business controlled by defendant W. Kent Ganske. All of the purchase contracts contained a provision specifying that, in the event the parties failed to settle their disputes under the contract, any dispute would be referred to arbitration–

> in accordance with the rules of the Society of Marine Arbitrators
> (hereinafter referred to as "the SMA") and the procedures set forth
> below. The jurisdiction of the regular courts shall be excluded . . .

> The dispute shall be settled by a sole arbitrator appointed by the SMA on the basis of the provisions of the present Contract as well as the laws of the State of Florida. The award shall be rendered in accordance with the Arbitration Rules of the SMA and be final and binding upon both parties. The award shall contain the amount and the apportionment of the Arbitration costs.

On July 13, 2017, ECTUS served an arbitration demand on WSAG pursuant to the terms of the contracts. On September 6-7, 2018, an evidentiary hearing was held before arbitrator Michael Young. Young heard testimony from five witnesses and accepted 175 exhibits into the record. On January 2, 2019, Young issued a Partial Final Award, awarding ECTUS compensatory damages of $14,283.519.42, plus pre-judgment interest. At Young's request, the parties submitted briefs regarding ECTUS's entitlement to an award of attorneys' fees and costs and the calculation of pre-judgment interest on the amount awarded.

After receiving and considering the parties' submissions, on March 6, 2019, Young issued his Final Award, awarding ECTUS the following: (1) $14,283,519.42 in compensatory damages; (2) $1,124,040.03 in prejudgment interest (which continues to accrue at the rate of $2,477.12 per day during the year 2019 and adjusted by Florida statute thereafter); (3) $182,498.96 in attorneys' fees; and (4) $34,000 in costs, for a total final award of $15,624,058.41.

ECTUS now asks this court to confirm the arbitration award and enter judgment against WSAG accordingly.[1] Dkt. 80. WSAG opposes confirmation of the Final Award and has filed its own motion to vacate or modify it on various grounds, but none of WSAG's arguments has any traction. Dkts. 82, 105. Accordingly, ECTUS's motion for confirmation of the Final Award will be granted.

---

[1] ECTUS also has moved for summary judgment on its breach of guaranty claim against Ganske and his wife, Julie. Dkt. 90. That motion will be addressed in a separate order.

## ANALYSIS

ECTUS petitions the court to confirm the arbitration award under Section 9 of the Federal Arbitration Act, which provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C.A. § 9. WSAG objects to confirmation, and instead asks the court to either vacate the award under § 10 or modify it under § 11.[2]

---

[2] Under 9 U.S.C. § 10(a), the court may vacate an award on the following grounds:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Under 9 U.S.C. § 11, the court may modify or correct an award:

(a) where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;

(b) where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or

(c) where the award is imperfect in matter of form not affecting the merits of the controversy.

Apart from the specific grounds articulated in Sections 10 and 11, a federal court has no authority to set aside an arbitration award even if the arbitrator "committed serious error" or issued a decision that is "incorrect or even whacky." *Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1025 (7th Cir. 2013) (internal citation omitted). *See also Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1504–05 (7th Cir. 1991) (federal courts do not review the soundness of arbitration awards, but only look to make sure the arbitrator upheld the parties' agreement to arbitrate). If none of the grounds set forth in Sections 10 or 11 applies, then the court "must grant" an order confirming the award. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008).

WSAG argues that the court should refuse to confirm the award for lack of jurisdiction. In the alternative, it argues that vacatur or remand is warranted because: (1) the arbitrator applied the rules of the Society of *Maritime* Arbitrators, not the rules of the Society of *Marine* Arbitrators, as called for by the Contracts, and therefore the award should be vacated under 9 U.S.C. § 10(a)(4) or modified under § 11(a); (2) the arbitrator "refused to hear evidence pertinent and material to the controversy" when he failed to hold an evidentiary hearing on WSAG's objection to ECTUS's proposed attorney's fees, justifying vacatur under § 10(a)(3); (3) the arbitrator made a "material miscalculation of figures" warranting modification under § 11(a); and (4) the arbitrator imperfectly executed his powers when he refused to consider parol evidence about the parties' course of dealing, warranting vacatur under § 10(a)(4).[3] I address each argument in turn.

---

[3] WSAG also argued that the motion to confirm was premature because the 90-day time period for a party to petition to vacate or modify the award had not yet run. Because WSAG now has filed a motion to modify or vacate, this argument is moot.

4

## I. Jurisdiction

WSAG argues that this court has no authority to confirm the Final Award because the parties did not explicitly consent to judicial confirmation in the Contracts. This argument is foreclosed by Seventh Circuit precedent. In *Milwaukee Typographical Union No. 23 v. Newspapers, Inc.*, 639 F.2d 386, 389–90 (7th Cir.), *cert. denied*, 454 U.S. 838 (1981), the court held that the parties need *not* explicitly agree to judicial confirmation of an award in order to confer such consent, so long as they agree that any arbitration decision will be "final and binding" upon both parties. *See also Daihatsu Motor Co. v. Terrain Vehicles, Inc.*, 13 F.3d 196, 202 (7th Cir. 1993) (finding consent-to-confirmation under § 9 where parties agreed that disputes would be "finally settled" by arbitration). Other circuits, although not all, agree that the parties' agreement to submit their disputes to "final and binding" arbitration strongly implies consent to judicial confirmation. *See, e.g. Booth v. Hume Pub., Inc.*, 902 F.2d 925, 930 (11th Cir. 1990) (provision in employment agreement that arbitrator's determination would be final and binding, along with Hume's full participation in the arbitration process, was sufficient under the FAA to confer authority on the district court to confirm the award); *Kallen v. District 1199, National Union of Hospital and Health Care Employees*, 574 F.2d 723, 726 (2d Cir. 1978) (where language of agreement provided that arbitration would be final and binding, appellant participated fully in arbitration process, and federal law would apply to interpretation of underlying agreement, the district court had authority under § 9 of the Act to enter judgment on the award); *but see Higgins v. U.S. Postal Service*, 655 F. Supp. 739, 744 (D. Maine 1987) (refusing to find that the "final and binding" language standing alone, without conduct from which an agreement could be inferred, was sufficient for relief under § 9 of the Act).

There is no dispute that the parties' Contracts in this case specified that the arbitrator's award shall be "final and binding" upon the parties. Moreover, WSAG participated fully in the arbitration process. Under the law of this circuit, this is enough to confer jurisdiction on this court to confirm the arbitration award.[4]

## II. The Arbitration Rules

The arbitration proceeding was conducted pursuant to the Rules of the Society of Maritime Arbitrators, or SMA. WSAG argues at length that because the contracts state that arbitration would be governed by the "rules of the Society of *Marine* Arbitrators," the arbitrator exceeded or imperfectly executed his powers such that vacatur is warranted under 9 U.S.C. § 10(a)(4). The apparent reason WSAG wants to get out from under the SMA rules is because they permitted the arbitrator to award attorney's fees and costs, which were not otherwise available under the Contracts or Florida law. *See* Final Award, dkt. 105, exh. 6, at 3; SMA Rule 30 ("The Panel is empowered to award reasonable attorney's fees and expenses or costs incurred by a party or parties in the prosecution or defense of the case.").

This argument is without merit. First, as WSAG admits, there is no such thing as a Society of Marine Arbitrators. Thus, logic suggests that the use of the word "Marine" instead

---

[4] There is no dispute that ECTUS and WSAG are of diverse citizenship and the amount in controversy exceeds $75,000. *Wisconsin Com'r of Ins. v. California Reinsurance Mgmt. Corp.*, 819 F. Supp. 797, 802 (E.D. Wis. 1993) (party seeking to confirm an arbitration award in federal district court pursuant to Section 9 of the FAA must first establish separate basis for federal subject matter jurisdiction). Further, venue is proper in this court even though the arbitration proceeding was not held in this district. *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193 (2000) (FAA's venue provisions are permissive, permitting motion to confirm, vacate, or modify an arbitration award either where the award was made or in any district proper under the general venue statute).

of "Maritime" was either a typographical error, or the terms are used interchangeably.[5] In fact, WSAG does not suggest what other rules – apart from those of the Society of Maritime Arbitrators – the parties might have intended to govern the arbitration when they used the word "Marine" instead of "Maritime."

Second, WSAG raised this argument before the arbitrator, who rejected it. Specifically, the arbitrator found:

> [W]hile Respondent correctly states that the contracts refer to the "rules of the Society of Marine Arbitrators" and there are no such rules, the parties have acted throughout this proceeding as though the Rules of the Society of Maritime Arbitrators ("Rules") apply. For example, the submissions to this Arbitrator throughout the proceedings – including Respondent's Pre-Hearing and Post-Hearing memoranda – all refer to the Society of Maritime Arbitrators and its Rules, and when counsel made particular discovery and evidence arguments, including those made orally, they referred to the relevant provisions of these Rules. Thus, while the reference in the contracts to the "rules of the Society of Marine Arbitrators" may have been a mistake, no one, during the course of the proceeding, acted as if the Rules of the Society of Maritime Arbitrators did not apply.

Final Award, dkt. 105, Exh. 6, at 3. The arbitrator noted that although WSAG had "raised the inconsistency of the nomenclature in some of its submissions," it had not ever argued that the rules of the Society of Maritime Arbitrators did not govern the proceeding until it filed its brief in opposition to fee and cost shifting. *Id*. at n.3. Thus, the arbitrator concluded from the parties' agreement and conduct during the arbitration proceeding that the rules of the Society of Maritime Arbitrators applied, and that attorney's fees were available under those rules.

An arbitrator exceeds his powers under § 10(a)(4) when he bases his decision on "some body of thought, feeling, or policy, or law that is outside the contract" such that his decision fails

---

[5] A Google search for "Society of Marine Arbitrators" yields only results pertaining to the Society of Maritime Arbitrators.

7

to "draw its essence" from the contract. *United Steelworkers of Am. v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597(1960); *Chicago Typographical Union No. 16 v. Chicago Sun–Times*, Inc., 935 F.2d 1501, 1505 (7th Cir. 1991). Where there is "some possible interpretive route" showing the arbitrator rooted his decision in his interpretation of the contract, the award cannot be disturbed. *Chicago Typographical Union No. 16*, 935 F.2d at 1506. The "sole question" is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans v. Sutter*, 569 U.S. 564, 569 (2013).

Here, it is plain that the arbitrator's determination drew its essence from the contract. In particular, he noted that the reference to *Marine* appeared to be an error, and that the parties' conduct before him was consistent with an understanding that the Rules of the Society of Maritime Arbitrators would apply. In effect, the arbitrator concluded that WSAG had waived its right to argue to the contrary by fully participating in the arbitration proceeding up until that point without raising an objection to application of those rules. It is an established principle of contract law that "a party may waive its contractual rights impliedly by taking actions inconsistent with the assertion of those rights." *Cent. States, Se. & Sw. Areas Pension Fund v. Schilli Corp.*, 420 F.3d 663, 672 (7th Cir. 2005) (citation omitted). Thus, in concluding that the Society of Maritime Arbitrators' rules applied, the arbitrator did not rely on an outside body of thought, feeling, or law, but on the language of the parties' contract, their conduct before him, and established principles of contract law. Because there is an interpretive route showing that the arbitrator's decision was rooted in the interpretation of the contract, this court has no basis to vacate the award. *See Union Local 701, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, No. 12 C 6355, 2012 WL 6764050, at *3 (N.D. Ill. Dec. 31, 2012) (arbitrator's conclusion that

party waived right to insist on strict compliance with timeliness requirement by its conduct was based on established principles of contract law and therefore court could not vacate award).

Likewise, the arbitrator's application of the rules of the Society of Maritime Arbitrators was not an "evident material mistake" warranting modification or correction under 9 U.S.C. § 11(a). "[R]elief under Section 11(a) is limited to simple formal, descriptive, or mathematical mistake[s], not disagreement over factual or legal decisions deliberately made." *J&J Sports Prods. Inc. v. Toetz Enterprises LLC*, No. 15-CV-1411-JPS, 2017 WL 6622548, at *2 (E.D. Wis. Dec. 28, 2017) (citing *Stroh Container Co. v. Delphi Industries, Inc.*, 783 F.2d 743, 749 (8th Cir. 1986) (internal quotation omitted)). The arbitrator's finding that the parties had agreed to arbitrate in accordance with the rules of the Society of Maritime Arbitrators, was not a scrivener's error, it was his legal determination about the substantive law that would apply. In fact, the arbitrator explicitly rejected the argument that WSAG makes here, finding that WSAG had waived its challenge by its conduct during the proceeding. This is a legal determination, not a computational error. It is not the kind of "mistake" that is reviewable under § 11(a).

### III. Evidentiary Hearing

WSAG argues that the Final Award should be vacated under § 10(a)(3) because the arbitrator "refused to hear evidence pertinent and material to the controversy" when he decided the issue of fees and costs without an evidentiary hearing. This is a strange argument for WSAG to make, considering that it never asked the arbitrator to hold an evidentiary hearing. As ECTUS points out, WSAG filed a 17-page response to ECTUS's brief on its entitlement to attorney's fees and never once suggested that the arbitrator should hold a hearing. Dkt. 105, Exh. 2. In addition, WSAG failed to present any rebuttal evidence in the form of counter-

affidavits or otherwise. WSAG sought leave and was granted permission to file a sur-reply on the issue of attorneys' fees and still did not request a hearing or submit rebuttal evidence, although it noted in a footnote that "normally" WSAG would be entitled to an evidentiary hearing. Dkt. 105-7, at n.5. Merely mentioning an evidentiary hearing in a footnote in a sur-reply hardly qualifies as a request, and it certainly is not grounds to find that the arbitrator "refused" to hear evidence. *See U.S. for Use & Benefit of Skip Kirchdorfer, Inc. v. Aegis/Zublin Joint Venture*, 869 F. Supp. 387, 393 (E.D. Va. 1994) ("[I]f the defendants had an objection to the procedures used by the arbitrators, such procedural issues should have been resolved at the arbitration. The Court will not vacate the arbitration award on this dubious ground.").

Even assuming, *arguendo*, that WSAG actually *had* requested an evidentiary hearing, an arbitrator's refusal to hold a hearing does not meet the standard required to vacate an arbitration award under 9 U.S.C. § 10(a)(3). Federal courts defer to an arbitrator's procedural decisions because she "enjoys wide latitude in conducting an arbitration hearing. Arbitration proceedings are not constrained by formal rules or procedure or evidence[.]" *Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1130 (7th Cir. 1997) (citation omitted). "An arbitrator is not bound to hear all of the evidence tendered by the parties," as long as each litigant has "an adequate opportunity to present its evidence and arguments." *Id*. (citation and quotations omitted). Here, the arbitrator allowed both parties to fully present their arguments and evidence on the interest calculation, attorney's fees, and costs, in many cases accepting WSAG's arguments in favor of a reduction. In fact, WSAG does not proffer what additional evidence it would have presented at an evidentiary hearing if one had been held. There is simply no basis to find that the arbitrator's failure to hold an evidentiary hearing rendered the proceeding unfair. Accordingly, vacatur is not warranted under § 10(a)(3). *See Flender Corp. v. Techna-Quip Co.*, 953

F.3d 273, 281 (7th Cir. 1992)(arbitration award can only be vacated under § 10(a)(3) if the evidence is relevant to the ultimate issue and if the "arbitrator's handling of . . . evidence rendered the [proceeding] unfair.")

In its reply brief, WSAG argues for the first time that the arbitrator's failure to hold an evidentiary hearing violated Florida law, which it says the parties had agreed would govern their dispute. By waiting to develop this argument until its reply brief, WSAG has waived the argument. *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011) ("[I]t is well-established that arguments raised for the first time in the reply brief are waived."). Even if I were to consider the argument, WSAG waived its right to seek an evidentiary hearing under *any* law by failing to request one before the arbitrator. Finally, the arbitrator found that the SMA rules governed the arbitration proceedings. Those rules provide for an award of attorney's fees and do not specify the need for an evidentiary hearing. As noted previously, this court has no authority to review the arbitrator's conclusions of law, so long as they were arguably rooted in the contract, which they undisputably were. *BEM I, LLC v. Anthropologie, Inc.*, 301 F.3d 548, 554-55 (7th Cir. 2002) ("[T]here is no judicial review of arbitration awards for legal error.") Accordingly, for all these reasons, the arbitrator's failure to hold an evidentiary hearing on the issue of attorney's fees is not a valid basis for this court to vacate the award.

## IV. Alleged Miscalculations

As an alternative to vacating the award, WSAG argues that this court should modify it. In particular, WSAG argues that the arbitrator made a number of errors in calculating the amount of interest, attorney's fees and costs due. Under the FAA, a court is permitted to modify or correct an award "where there was an evident material miscalculation of figures or an

evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a). For instance, double recovery would warrant a modification of an award. *See Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994). As noted previously, the modification provision of the FAA "is present to correct patent mathematical errors or misidentifications," and is not "a vehicle through which a dissatisfied party may make an end run around the limited judicial review of arbitral decisions." *Mical v. Glick*, No. 13 C 6508, 2014 WL 322093, at *3 (N.D. Ill. Jan. 28, 2014), *aff'd*, 581 Fed.Appx. 568 (7th Cir. 2014).

That is precisely what WSAG is trying to do here. Although acknowledging that the arbitrator made a number of reductions to the attorney's fees, costs, and interest in response to WSAG's objections, WSAG argues that the arbitrator did not reduce the amounts *enough*. Generally, WSAG argues that it was unfair for the arbitrator to make WSAG bear the costs of arbitrating issues that were decided in its favor, and that his blanket percentage reductions of attorney's fees were not specific enough. But these are not mathematical or computational errors; instead, WSAG is accusing the arbitrator of making legal and factual errors in arriving at the amount of attorney's fees. These are not the sorts of "evident mistakes" that § 11(a) is meant to correct. "Arbitration does not provide a system of 'junior varsity trial courts' offering the losing party complete and rigorous de novo review." *Eljer*, 14 F.3d at 1254 (quoting *National Wrecking Co. v. International Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993)). WSAG does not argue that the arbitrator ordered it to pay damages that have already been paid, awarded ECTUS a double recovery, or committed a mathematical mistake that is "patent" from his award. It merely disagrees with the arbitrator's decision. This court cannot modify the award on that basis.

Finally, WSAG contends that, after reducing the amount of attorney's fees owed to ECTUS, the arbitrator failed to reduce commensurately the amount of interest owed. Dkt., at 7, ¶ 34. As ECTUS points out, however, the arbitrator awarded prejudgment interest only on the compensatory damages amount of $14,283,519.42, not on the amount of attorney's fees and costs awarded to ECTUS. Therefore, any "reductions" he made to the fees and costs awarded have no bearing on the calculation of the amount of prejudgment interest owed. It follows that WSAG's contention that the calculation of prejudgment interest was a "material mistake" is without merit.

## V. Refusal to Consider Parol Evidence

WSAG argues that the arbitrator "imperfectly executed his powers" under 9 U.S.C. § 10(a)(4) when he declined to consider parol evidence about the parties' course of dealing. Dkt. 82, at 21-22. This argument has no merit. "The fact that an arbitrator makes a mistake, by erroneously rejecting a valid, or even a dispositive legal defense, does not provide grounds for vacating an award unless the arbitrator deliberately disregarded what she knew to be the law." *Flexible Mfg. Sys. Pty. Ltd. v. Super Prod. Corp.*, 86 F.3d 96, 100 (7th Cir. 1996). No such deliberate disregard has been shown here. Once again, WSAG merely seeks appellate review of the issues it has already arbitrated. This review is not available under the FAA.

## VI. Conclusion

In sum, WSAG has failed to show that grounds exist to vacate the award under 9 U.S.C. § 10(a) or to modify or correct it under § 11. This being so, this court shall confirm the award. Accordingly,

13

# ORDER

IT IS ORDERED that:

1. The motion of plaintiff Eurochem Trading, USA Corporation (ECTUS), for an order confirming the arbitration award issued by Michael Young on March 6, 2019 in favor of Eurochem Trading USA Corporation and against WS AG Center, Inc., dkt. 80, is GRANTED.

2. The motion of third party plaintiff WSAG to vacate/modify/correct the arbitration award, dkt. 105, is DENIED.

3. ECTUS's motion to file a sur-reply to WSAG's motion to vacate/modify/correct the Arbitration Award, dkt. 115, is DENIED as moot.

3. Not later than July 22, 2019, ECTUS should submit a proposed final judgment to the court in accordance with the arbitration award. WSAG has until August 5, 2019 to file any objections to ECTUS's mathematical computations and to make a showing that there are just reasons for the court to delay entry of judgment. *See* Fed. R. Civ. P. 54(b). No other objections shall be considered. Eurochem shall have until August 15, 2019 in which to file a reply.

Entered this 8th day of July, 2019.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge