IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EUROCHEM TRADING USA CORPORATION,

      Plaintiff,

 v.

W. KENT GANSKE, individually and
d/b/a and sole proprietor of AG CONSULTANTS,
and JULIE L. GANSKE,

      Defendants.

ORDER

W. KENT GANSKE, individually and d/b/a AG
CONSULTANTS, and JULIE GANSKE,

18-cv-16-slc

 Counter-Plaintiffs and Third-Party Plaintiffs,
and

WS AG CENTER, INC.,

      Third-Party Plaintiffs,
 v.

EUROCHEM TRADING USA CORPORATION,

      Plaintiff and Counter-Defendant,
and

EUROCHEM GROUP AG, SCOTT SIMON, IVAN
BOASHERLIEV, BENTREI FERTILIZER, LLC
and BEN-TREI, LTD.,

      Third-Party Defendants.

_____

On October 21 this court will hold a bench trial on defendants' W. Kent Ganske and Julie Ganske's claims that they were fraudulently induced into signing a Guaranty that obligated them to pay monies owed by W. Kent Ganske's company, WS AG Center, Inc., to plaintiff Eurochem Trading USA Corporation ("ECTUS"). Two motions are before the court: (1) the Ganske parties' motion to compel plaintiff to produce emails between the parties from 2014-2016 (dkt. 174); and (2) ECTUS's motion to quash witness subpoenas for Scott Simon and

Charles Bendana (dkt. 182). As stated below, the motion to compel will be denied and the motion to quash will be granted.

I.  **Ganske Motion to Compel (dkt. 174)**

The Ganske parties move to compel ECTUS to produce documents responsive to RFP Nos. 29 and 35. RFP 29 requested "All communications between the parties" and RFP 35 requested "All Communications between You and any of the Parties from 2014 to the Present." In its written responses served on June 3, 2019, ECTUS explained that responsive documents had already been provided to the Ganskes as part of the discovery exchanged in the parallel arbitration proceeding between ECTUS and WSAG. During that proceeding, WSAG had sought all communications between the parties from May 2015 to the date of service of the request, and ECTUS had produced those documents. The disclosure of documents covering the time frame from May 2015 to the present seemed to be satisfactory to the Ganskes, because they did not raise the issue in their first motion to compel filed June 27, 2019. *See* dkt. 117.

On October 4, 2019 — the last day of discovery before the October 21, 2019 bench trial — counsel for the Ganskes contacted counsel for ECTUS and complained that no documents before November 2016 and been provided by ECTUS in response to RFP's 29 and 35. Dkt. 176, exh. A. This was incorrect: as just discussed, ECTUS had provided responsive documents dating back to April 10, 2015 in the arbitration proceeding. Nonetheless, ECTUS's lawyers said they would go back and produce emails from 2014 to the present between the Ganskes and ECTUS. *Id*. Later that day, however, ECTUS's lawyers advised the Ganske's lawyers that

2

ECTUS did not have documents going back to 2014 in its database and therefore would not be producing additional documents. *Id*. The Ganskes then filed the instant motion to compel.

Documents pre-dating April 2015 are not relevant. The Guaranty that is the subject of ECTUS's complaint was signed in March and May, 2017, by Kent Ganske and Julie Ganske, respectively. The conduct upon which the Ganske's third-party complaint is based began in 2016 at the earliest. Finally, the Ganskes have failed to make any persuasive argument as to why emails between the parties predating by two years any of the conduct at issue in this case is relevant. Accordingly, the motion to compel will be denied.

## II. ECTUS's Motion to Quash Subpoenas (dkt. 182)

On October 11, 2019, counsel for the Ganskes emailed to ECTUS's counsel subpoenas for two ECTUS employees: (1) Scott Simon, who lives in Oklahoma; and (2) Charlie Bendana, who lives in Switzerland. Counsel for ECTUS responded that he was not authorized to accept service of either trial subpoena. ECTUS now moves to quash the subpoenas under Fed. R. Civ. P. 45 (d)(3)(A)(ii), on the grounds that the subpoenas were not properly served, and that neither witness is within the territorial reach of the court's subpoena power under Fed. R. Civ. P. 45.

Trial subpoenas are governed by Rule 45 of the Federal Rules of Civil Procedure. Subsection (b) of the rule imposes limitations on service of a subpoena. Among the requirements, a copy of the subpoena must be delivered to the named person and, if the subpoena requires that the person's attendance, fees must be tendered "for 1 day's attendance and the mileage allowed by law." Fed. R. Civ. P. 45(b)(1). Subsection (c) restricts the geographic scope of the court's subpoena power. It states:

3

(c) Place of Compliance

(1) For a Trial, Hearing, or Deposition. A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

The Ganskes have failed several of the Rule 45 requirements. In serving the subpoenas, the Ganskes failed to meet two of the requirements in Rule 45(b)(1). First, plaintiff sent the subpoenas to counsel for ECTUS, not to the witnesses themselves. *See* 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 2454 (3d ed. 2008) ("Moreover, unlike service of most litigation papers after the summons and complaint, service [of a Rule 45(b)(1) subpoena] on a person's lawyer will not suffice."). Second, it appears they did not tender the required travel expenses with the subpoenas.

More substantively, the subpoenas were issued to individuals outside the territorial reach of this court's authority, as described in Rule 45(c). Neither Simon nor Bendana resides in, is employed in, or regularly transacts business in person in Wisconsin. Although the Ganskes point out that this court found that Simon had contacts with Wisconsin sufficient to subject him to personal jurisdiction, that finding was based on the fact that Simon had four brief telephone contacts "targeted at Wisconsin." *See* Op. and Ord., March 7, 2018, dkt. 78, at 7. That is not enough to show that he regularly transacted business *in person* in Wisconsin. *Accord M'Baye v.*

*New Jersey Sports Production, Inc.*, 246 F.R.D. 205, 207-08 (S.D.N.Y. 2007) (infrequent business trips to New York and telephone, email, and fax communications do not amount to "regularly transacting business"); *Greene v. Drobocky*, No. 1:12-CV-00078-TBR, 2014 WL 12726539, at *2 (W.D. Ky. Aug. 27, 2014) ("Because Thielbar has never traveled to Kentucky and Arnold has only traveled to Kentucky once, even under the broadest interpretation of the Rule they cannot be considered to 'regularly transact business in person' within the state of Kentucky or the relevant area.") As for Bendana, the Ganskes appear to argue that he regularly transacts business in Wisconsin because he is an "agent" of ECTUS, which regularly transacts business here. That argument, too, is unpersuasive. *See Havens v. Maritime Communications/Land Mobile, LLC*, 2014 WL 2094035, * 2 (D. N.J. May 20, 2014) (rejecting similar argument). The rule expressly contemplates protecting even party officers from having to travel more than 100 miles from where they regularly transact business to appear at trial; certainly, Bendana, who is neither a party or a party officer, is entitled to the same protection.

Accordingly, this court must quash the subpoenas. Fed. R. Civ. P. 45(d)(3) (providing that the court, on timely motion, *must quash* a subpoena that . . . "(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c).").

In their opposition brief, the Ganskes ask the court to rule that certain emails purportedly written by Simon and Bendana are admissible under the residual exception to the hearsay rule notwithstanding these witnesses' absence at trial. The court declines to rule in advance of trial on the admissibility of particular documents. However, F.R. Ev. 807(a) does not contemplate the admission of hearsay at trial in circumstances where a party has failed properly to procure the declaring witnesses' attendance at trial and has not sought to depose those witnesses before trial. It is unlikely that the Ganskes will surmount this hurdle.

5

## III. Trial Mechanics

The matters to be tried to the court are straightforward: (1) whether Kent Ganske was fraudulently induced by ECTUS's representatives to sign the Guaranty on March 8, 2017; (2) whether Julie Ganske was likewise fraudulently induced to sign the Guaranty on May 10, 2017; and (3) whether Julie Ganske's Guaranty is void for lack of consideration. Although the court will grant the parties some leeway in terms of presenting evidence outside this general time frame, the court expects the parties to focus their presentations on the events surrounding these dates. Attempts to re-litigate issues already decided either in this court or in the arbitration proceeding will not be permitted.

Because the parties' trial briefs have adequately framed their positions, the court does not need or want opening statements. After discussing any housekeeping matters, we will go straight into the evidence. Because the court has already found that the Guaranty is presumptively valid and there is no dispute that the Ganskes breached the Guaranty, the Ganskes will present evidence first on their affirmative defenses/counterclaims for fraud and lack of consideration. That said, the court does not expect any witness to take the stand twice: ECTUS should ask all of its questions of witnesses called by the Ganskes rather than reserve its "direct" for its own case.

At the conclusion of the evidence, the court will **not** rule from the bench but will set a schedule for post-trial briefing in consultation with the parties. Therefore, the court does not need or want closing arguments.

ORDER

1. The Ganske parties' motion to compel discovery, dkt. 174, is DENIED.

2. ECTUS's motion to quash the trial subpoenas for Charles Bendana and Scott Simon, dkt. 182, is GRANTED.

Entered this 17th day of October, 2019.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge