IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EUROCHEM NORTH AMERICA CORP.
f/k/a/ EuroChem Trading USA Corporation,

                    Plaintiff,
   v.

W. KENT GANSKE, individually and
d/b/a and sole proprietor of AG CONSULTANTS,
and JULIE L. GANSKE,

                    Defendants.

ORDER

18-cv-16-slc

W. KENT GANSKE, individually and d/b/a AG
CONSULTANTS, and JULIE GANSKE,

    Counter-Plaintiffs and Third-Party Plaintiffs,
and

WS AG CENTER, INC.,

                 Third-Party Plaintiffs,
   v.

EUROCHEM NORTH AMERICA CORP,
f/k/a/ Eurochem Trading USA Corporation,

             Plaintiff and Counter-Defendant,
and

EUROCHEM GROUP AG, SCOTT SIMON, IVAN
BOASHERLIEV, and EUROCHEM NORTH AMERICA
CORP., successor by merger to Ben-Trei Fertilizer
Company and successor by merger to Ben-Trie, Ltd.,

             Third-Party Defendants.

_____

      Plaintiff Eurochem North America Corp. (formerly Eurochem Trading USA Corporation) ("ECTUS") has moved to compel Russell Law Offices, SC, (1) to comply with ECTUS's subpoena for documents, served on October 2, 2019; and (2) to disclose in its answer to a garnishment summons the amount it is holding in its trust account for WS AG Center, Inc. Dkt. 209. Russell Law Offices objects on the ground that the information sought is confidential. For the reasons stated below, I reject the law firm's objections and I am granting the motion to compel.

BACKGROUND

On August 9, 2019, this court entered judgment in favor of ECTUS against WS AG Center, Inc. ("WSAG") in the amount of $16,119,482.41. As part of ECTUS's efforts to collect on that judgment, on October 2, 2019, it served a subpoena for documents on Russell Law Offices, SC, a law firm that represents WSAG and its owner, W. Kent Ganske. ECTUS had previously learned that WSAG had deposited $1.49 million in proceeds from the sale of its assets to third party United Cooperative into a trust account at the Russell law firm. According to a closing statement from the sale, this amount was designated as payment of WSAG's federal and state taxes.

The October 2 subpoena requested the law firm to provide the following documents:

1. All documents concerning or related to the $1,490,000 placed in the Russell Law Offices, SC trust account at closing of the sale of the assets of WS AG Center, Inc. to United Cooperative on or about December 6, 2018 from December 6, 2018 to the present.

2. All documents concerning or related to or showing disbursements of the $1,490,000 placed in the Russell Law Offices, SC trust account at closing of the sale of assets of WS AG Center, Inc. to United Cooperative on December 6, 2018 from December 6, 2018 to the present.

The subpoena specified the time for compliance as October 25, 2019.

Separately, on October 4, 2019, this court granted ECTUS's motion to issue a garnishment summons and complaint directed to the law firm. Dkt. 172.

On October 25, the law firm served a response to the subpoena, objecting to producing any documents on the ground that they were subject to the attorney-client privilege. That same day, the law firm served an answer to the garnishment summons. The firm refused to disclose the amount of funds it was holding for WSAG, again asserting the attorney-client privilege. It also asserted that it has an attorneys' charging lien on the funds in its trust account.

In its response to the motion to compel, the law firm acknowledges that proceeds from the 2018 closing "were placed in [the firm's] Trust Account to pay for taxes, closing fees, and other transactional costs that were not yet determined at the time of closing." Dkt. 214. The law firm further asserts that in connection with the closing, it entered into a "Representation Agreement" with WSAG in which WSAG agreed to pay a certain amount of the closing proceeds to the law firm as "retainer fees" for legal services and further, to grant the law firm a lien on those funds.

The law firm reports that by June 1, 2019, all of the proceeds from the closing had been disbursed, with some funds deposited into the law firm's business account in accordance with the parties' Representation Agreement. As of October 7, 2019, there was $4,723.57 of advance legal fees (*a/k/a* "unearned funds") paid by WSAG in the law firm's business account. (The firm asserts that it did not provide this information earlier because it was privileged, but that WSAG recently approved the disclosure.) The law firm asks the court to declare the lien valid or, in the alternative, to permit it to offset any legal fees since October 7, 2019 from the $4,723.57 in its business account before declaring those funds subject to garnishment.

OPINION

The law firm contends that it is prohibited from disclosing the sought-after financial information under Wis. Supreme Court Rule 20:1.6, which provides that a lawyer shall not reveal "information relating to the representation of a client" unless certain exceptions apply, one of which is a court order. In recognizing the duty of confidentiality inherent in the attorney-client relationship, the comment to SCR 20:1.6 states, in relevant part:

> The principle of confidentiality is given effect in two related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law.

As explained in the comment, the general confidentiality rule "applies in situations *other than those* where evidence is sought from the lawyer through compulsion of law." Where, as here, the lawyer is being called "to produce evidence concerning a client" in a judicial proceeding, disclosure is required unless the attorney-client privilege applies. This privilege is narrower than the general ethical obligation to guard client confidences. *DeBardeleben v. Ethics Bd.*, 112 Wis. 2d 324, 326, 332 N.W.2d 826, 827 (Ct. App. 1983).

As ECTUS points out, numerous courts have held that records of receipts and disbursements into and out of a lawyer's trust account are not privileged communications protected by the attorney-client privilege. *See, e.g.*, *S.E.C. v. First Sec. Bank of Utah, N.A.*, 447 F.2d 166, 167 (10th Cir. 1971) (client may not immunize his business transactions from discovery by the device of a lawyer's commercial checking account); *United States v. Horvath*, 731 F.2d 557, 580 (8th Cir. 1984)(privilege does not apply where attorney merely acts as conduit for client's funds), and cases cited in ECTUS's brief, dkt. 209, at 6. The law firm offers no case citations or arguments to the contrary. It merely assert that, to comply with its ethical obligations to WSAG, it cannot produce the requested documents without a court order. Dkt.

214 at 5 ("If the Court believes that the information would be discoverable, RLO can only provide the information pursuant to a Court Order based on Wis. Supreme Court Rule 20:1.6."). Accordingly, absent any claim by the firm that the sought-after records are privileged, I find that the subpoenaed records are discoverable, and I am ordering the law firm to produce them.

Without citing any authority, the law firm asks the court to make an exception for "any information relating to transactions that took place strictly between [the firm] and WS Ag such as transfers between [law firm] accounts as that is information specifically between the client and the law firm." Dkt. 214, at 5. Merely because a transaction occurs "between" a client and his lawyer or reflects payment for legal fees does not cloak the transaction in confidentiality. To the contrary, information such as "the number of hours billed, the parties' fee arrangement, costs and total fees paid do not constitute privileged information." *Real v. Cont'l Grp., Inc.*, 116 F.R.D. 211, 214 (N.D. Cal. 1986) (cited in *Lane v. Sharp Packaging Sys., Inc.*, 2002 WI 28, ¶ 37, 251 Wis. 2d 68, 105, 640 N.W.2d 788, 805); *In re Osterhoudt*, 722 F.2d 591 (9th Cir. 1983) (amounts and dates of payment of legal fees not privileged). Although the Wisconsin Supreme Court held in *Lane* that billing records may be privileged when "production of the documents reveals the substance of lawyer-client communications," 2002 WI 28 at ¶ 41, in the instant case the law firm makes no such claim. Thus, records showing transfers of funds from WSAG to the law firm or between its accounts for legal services are not privileged and must be disclosed.

The next issue concerns the $4,723.57 in the law firm's account that WSAG paid to the law firm as advanced legal fees. The law firm insists that it has a valid lien over these funds, pointing out that Wisconsin's rules of professional responsibility expressly permit a lawyer to "acquire a lien authorized by law to secure the lawyer's fee or expenses." WI ST RPC SCR 20:1.8(i)(1). The rule, however, only permits a lawyer to acquire a lien "authorized by law,"

5

namely state law. *See* ABA Comment to SCR 20:1.8 ("The law of each jurisdiction determines which liens are authorized by law."). Wisconsin law authorizes three types of attorney's liens: (1) statutory attorney's liens, which exist only by agreement between attorney and client and can attach only to funds awarded in a tort or contract case; (2) a retaining lien on a client's papers; and (3) an equitable, or "charging lien," that arises from common law. *In re Edl*, 207 B.R. 611, 613 (Bankr. W.D. Wis. 1997). This third type of lien "attaches to the proceeds of a judgment decree or award obtained by the attorney for her client . . . and is upheld on the theory that the attorney's services and skills created the fund." *Id*.

The law firm's purported lien does not meet any of these criteria. The $4,723 in the firm's account arose from the sale of WSAG's assets, not from a tort or contract case or from any award obtained by the law firm for WSAG. Although the law firm insists that the lien provided by WSAG to RLO is valid "based on straightforward contract law," it cites no Wisconsin case recognizing such a contractual lien that did not involve funds awarded in a tort or contract case. The only case it cites is from Ohio, which is not the law of this jurisdiction. In the absence of any persuasive authority from the law firm, I find that the law firm does not have a valid lien over any of WSAG's funds in the firm's trust or business accounts.

Finally, the law firm asks permission to offset any legal fees since October 7, 2019 from the $4,723.57 of unearned funds prior to transferring the remaining funds to plaintiff. I am denying this request. The law firm can bill its client for the legal fees expended in opposing the motion to compel.

ORDER

IT IS ORDERED that:

1. Plaintiff's motion to compel Russell Law Offices, SC, to comply with plaintiff's Subpoena for Documents, dkt. 209, including information regarding disbursements to the Russell Law Offices, SC for payment of fees, is GRANTED, and Russell Law Offices, SC must disclose this information not later than December 6, 2019;

2. Plaintiff's motion to compel Russell Law Offices, SC to provide a substantive response to plaintiff's Garnishment Summons and Complaint, dkt. 209, is GRANTED, and Russell Law Offices, SC must disclose this information not later than December 6, 2019;

3. Russell Law Offices, SC does not have a valid lien over any of the funds deposited or paid by WSAG to the law firm, nor did it have a valid lien at the time it was served with the garnishment summons and complaint; and

4. Russell Law Offices, SC's request for permission to offset any legal fees since October 7, 2019 from the $4,723.57 of unearned funds before transferring the funds to plaintiff is DENIED.

Entered this 25th day of November, 2019.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge