IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EUROCHEM NORTH AMERICA CORP.
f/k/a/ EuroChem Trading USA Corporation,

                    Plaintiff,

          v.

W. KENT GANSKE, individually and
d/b/a and sole proprietor of AG CONSULTANTS,
and JULIE L. GANSKE,

                    Defendants.

OPINION AND ORDER

18-cv-16-slc

W. KENT GANSKE, individually and d/b/a AG
CONSULTANTS, and JULIE GANSKE,

          Counter-Plaintiffs and Third-Party Plaintiffs,
and

WS AG CENTER, INC.,

                    Third-Party Plaintiffs,

          v.

EUROCHEM NORTH AMERICA CORP,
f/k/a/ Eurochem Trading USA Corporation,

                    Plaintiff and Counter-Defendant,
and

SCOTT SIMON, IVAN BOASHERLIEV, and EUROCHEM
NORTH AMERICA CORP., successor by merger to Ben-Trei
Fertilizer Company and successor by merger to Ben-Trei,
Ltd.,

                    Third-Party Defendants.

---

        Before the court is the motion of W. Kent and Julie Ganske to transfer venue of this case

to the Eastern District of Wisconsin.  Dkt. 310.  For the reasons stated below, the court is

denying the motion.

BACKGROUND

Plaintiff EuroChem North American Corp. ("EuroChem") initiated this civil action on January 8, 2018, seeking a judgment against W. Kent and Julie Ganske for breaching their personal guarantees to pay for debts owed by their wholly-owned corporation, WS AG Center, Inc. ("WSAG"). Dkt. 1. The action was stayed while EuroChem and WSAG arbitrated their dispute over the underlying debt, which led to an award in EuroChem's favor. In orders entered July 8, 2019, and August 7, 2019, respectively, this court confirmed the arbitration award and entered judgment against WSAG in the amount of $16,119,482.41. Dkts. 125, 146, 147.

Meanwhile, on March 15, 2018, the Ganskes filed a counterclaim alleging that their guarantees were void and unenforceable for various reasons, including fraud. Dkt. 15. At the same time, the Ganskes, joined by WSAG, filed a third party complaint against EuroChem and related entities and employees for unfair competition under the Lanham Act, trade secret misappropriation, defamation, and other state laws. *Id*. After finding that the Ganskes had waived their right to a jury trial in connection with EuroChem's action to collect on the debt and the Ganskes' corresponding fraud defense, this court bifurcated the trials on the complaint and the third-party complaint.

On December 30, 2019, after a two-day bench trial, the court rejected the Ganskes' claims that their personal guarantees to pay WSAG's debt were void and unenforceable because of fraud or lack of consideration, and found that EuroChem was therefore entitled to judgment on its claim for breach of guaranty in the amount of $16,119,482.41, plus interest. Dkt. 226.

2

However, the court declined to direct entry of final judgment pending the outcome of the third-party claims, which were to be tried before a jury on February 24, 2020.[1]

On February 14, 2020, this court issued a 30-page order addressing the parties' motions *in limine*, and on February 19, 2020, it distributed draft voir dire questions, jury instructions, and a special verdict form.  Dkts. 296, 300.  The court's rulings on the *in limine* motions had substantive implications for the Ganske parties' claims: in addition to striking nine fact witnesses and two expert witnesses, the court ruled that a number of facts – including the validity of WSAG's underlying debt – were uncontestable because they had already been adjudicated by the court or the arbitrator.  Dkt. 296.

Meanwhile, on February 18, W. Kent and Julie Ganske informed the court that they had filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Wisconsin ("the Bankruptcy Court").  Dkt. 299.  After hearing argument at the pretrial conference on February 19, this court granted the Ganskes' request to cancel the jury trial and advised the parties that they could submit a proposal on what the court should do next no earlier than April 3, 2020.  Dkt. 302 (text only order).

On October 14, 2020, the Bankruptcy Court entered an order holding that the bankruptcy automatic stay does not apply to the Ganskes' third-party complaint and that EuroChem could ask this court to reschedule the jury trial; EuroChem did so on October 19, 2020.  Dkt. 307.  On November 20, the Ganskes filed the instant motion to transfer venue of this case to the Eastern District of Wisconsin so that the remaining third party claims can be

---

[1] Notwithstanding that judgment on the complaint has not been entered by this court, the parties have agreed to allow EuroChem's claim of $16,665,974.48 in the bankruptcy proceeding, subject only to set-off by any amount awarded to the Ganskes on the third party claims.  dkt. 306-1, ¶ 6.

heard in the Bankruptcy Court in conjunction with the Ganskes' pending Chapter 11 case. Dkt. 310.

OPINION

The Ganskes seek transfer pursuant to 28 U.S.C. § 1412, or in the alternative, 28 U.S.C. § 1404(a). 28 U.S.C. § 1412 provides:

> a district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

Both statutes authorize a transfer to another district "for the convenience of the parties" or "in the interests of justice," and the parties agree that analysis of these factors is essentially the same under both statutes. However, § 1412 applies only to a "case or proceeding under title 11," while § 1404 applies generally to any civil action. The primary difference between the two statutes is that a transfer under § 1404 may only be made to a district where the action could have been brought, whereas § 1412 has no such restriction.

As the parties point out in their briefs, courts are split as to which statute applies to a case like this one that is not the main bankruptcy case but is only "related to" a pending bankruptcy case. *Compare, e.g., Multibank, Inc. v. Access Global Capital LLC,* 594 B.R. 618, 624 (Bankr. S.D.N.Y. 2018), *Jackson v. Venture Dep't Stores, Inc.*, No. 98-c-6216, 1998 WL 778057 (N.D. Ill. 1998), and *Fitzgibbon v. Radack*, 597 B.R. 836 (E.D. Va. 2019) (all holding that § 1404 governs

4

transfer of "related to" cases), *with Dunlap v. Friedman's, Inc.*, 331 B.R. 674 (S.D.W.V. 2005) and *Tapia v. Davol, Inc.*, 562 B.R. 765 (S.D. Cal. 2016), which applied § 1412 to a case related to a bankruptcy case.   EuroChem urges this court to join the former group of cases, and further, to deny transfer under § 1404 on the ground that this action could not have been brought in the Eastern District of Wisconsin.  The Ganskes, on the other hand, urge this court to join the latter group of cases and find that § 1412 applies, but as a fallback they contend that they meet the criteria for transfer under § 1404.

If the Ganskes are correct on this last point, then I need not pick sides in the § 1412 *versus* § 1404 debate, so it makes sense to begin the analysis here.  Section 1404 restricts the transfer of cases to a district "where [the case] might have been brought."  29 U.S.C. § 1391(b) governs venue of civil actions and provides that actions may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  Residency for a natural person is defined as "the judicial district in which that person is domiciled."  28 U.S.C. § 1391(c)(1).

The Ganskes concede that they resided in Dane County when this action was filed. Moreover, although not directly relevant to the venue analysis (because WSAG was not a defendant in the initial complaint) WSAG  also was domiciled in the Western District of Wisconsin in January 2018.

Even so, say the Ganskes, venue in the Eastern District would have been appropriate because a substantial part of the events or omissions giving rise to the claim occurred there.  I disagree.  As EuroChem points out, the cause of action in EuroChem's initial complaint was

breach of the Ganskes' personal guarantees. The guarantees were executed in Dane County where the Ganskes resided. The obligation to be performed under the guaranty – payment to EuroChem – was to be performed in Florida where EuroChem is headquartered. The obligor on the underlying debt was WSAG, which was headquartered in the Western District at the time it entered into the purchase orders that gave rise to the debt. Finally, the product that WSAG purchased from EuroChem was delivered to various barge terminals, none of which was located in the Eastern District of Wisconsin.

In response, the Ganskes point out that they owned a second home in the Eastern District, WSAG "operates a store" in Dodge County, and Kent Ganske's feed business, AG Consultants, began with Ganske's farming operation "based out of" Dodge County. Even assuming that these descriptions apply to W. Kent Ganskes' and WSAG's business operations as they existed in January 2018 as opposed to at present – which is not clear from their briefs – their general descriptions about where WSAG and W. Kent Ganske "operate" are not enough to show that a substantial part of the key events or omissions occurred in the Eastern District. The Gankes may have done business outside the Western District, but EuroChem's complaint concerns a unique subset of those operations. None of the specific events or omissions that led to EuroChem's suit against the Ganskes for failing to honor a personal guaranty occurred in the Eastern District. This means that transfer under § 1404 is off the table.

This being so, I must now decide whether § 1412 applies to a case that does not arise "under Title 11" but is "related to" a bankruptcy proceeding. In their briefs, the parties do a good job summarizing the split in the cases and articulating why this court should adopt its side's respective position. Having read the cases and considered the competing arguments, I am

more persuaded by the reasoning of the cases cited by EuroChem.  In *Multibank, Inc. v. Access Global Capital LLC*, 594 B.R. 618 (Bankr. S.D.N.Y. 2018), the primary case cited by EuroChem, the court explained why it was rejecting the reasoning employed by courts that read § 1412 expansively to include cases "related to" a case under Title 11:

> Many of the decisions that apply a broad scope to section 1412 reflect a clear frustration with the limited statutory language and a desire to enforce an approach that might make more sense. But the statutory language is clear. Section 1412 applies by its terms only to cases or proceedings "under" the Bankruptcy Code. There is nothing ambiguous about that language. It is plainly different from the language used elsewhere in title 28, including in other provisions (such as section 1409) that almost immediately precede section 1412.  I am not free to ignore the limiting language, or to treat section 1412 as though it includes extra language that Congress used in other sections of title 28 but that Congress did not include in section 1412 itself.  Nor am I free to rewrite section 1412 based on arguments that it would make more sense if section 1412 had a broader application.  The terms of section 1412 simply do not grant me the power to transfer a New York State litigation that is not a case or proceeding "under" the Bankruptcy Code.

*Id*. at 623-24.[2]

I share this view.  Accordingly, because the Ganskes' third-party complaint undisputably is not a case or proceeding "under" the bankruptcy code, I cannot transfer it to the Eastern District pursuant to 28 U.S.C. § 1412.

Thus, because the Ganskes do not qualify for transfer under either § 1412 or § 1404, their motion must be denied.

---

[2] Although arguably dicta, Judge Crabb also has questioned how § 1412's language can be "stretched" to include cases "related to" a proceeding under title 11.  *Szelagowski v. Newpage Wisconsin Sys., Inc.*, No. 13-CV-433-BBC, 2013 WL 6528115, at *2 (W.D. Wis. Dec. 12, 2013).

Even if I were to assume, *arguendo*, that transfer was available under either statute, I still would deny the motion because the Ganskes have failed to make a persuasive case that it is in the interests of justice to do so.  In evaluating this factor, the court considers the "efficient administration of the court system," and focuses on "factors including docket congestion and likely speed to trial in the transferor and potential transferee forums, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy." *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986) ("The 'interest of justice' . . . may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result.") (citations omitted).  "Determining the interests of justice . . . largely turns on whether judicial economy would be served by a transfer." *Ashley Furniture Indus., Inc. v. Packaging Corp. of Am.*, 275 F. Supp. 3d 957, 968 (W.D. Wis. 2017).

The Ganskes argue that it would cheaper, faster, and more efficient for the Bankruptcy Court to try this case, which could be scheduled in conjunction with other proceedings, would likely be held remotely, and where bankruptcy counsel could try the case without the need to seek approval from the Bankruptcy Court to employ counsel to try the case before a jury in this court.  Although the Ganskes have not proffered a date certain on which the Bankruptcy Court could try this case, they presume that it would be earlier than a jury trial in this court (currently scheduled for May 17, 2021), given the suspension of jury trials in this district until at least February 2021 and the resulting backlog once that order is lifted.  Finally, although they acknowledge that WSAG is not a debtor in the bankruptcy proceeding, they express confidence

that the Bankruptcy Court could exercise jurisdiction over WSAG as a case "related to" the Ganskes' pending bankruptcy case.

These are valid concerns, but considering the totality of circumstances, I conclude that it is more just and more efficient to try the third party claims in this court. First, although I have no doubt that the Bankruptcy Court could get up to speed fairly quickly, this court already has prepared this case for trial, it understands the parties and the issues, and it is prepared to try the case at the earliest opportunity. If the case were transferred, duplication of effort would be required of the Bankruptcy Court as it acquainted itself with the claims, history, and issues in this case. Moreover, although many anticipated evidentiary disputes were addressed in this court's order on the *in limine* motions and the parties have are bound by those orders, additional matters could arise that implicate this court's prior rulings, which of course would be much easier to adjudicate if this court was trying the case.

Second, although the Bankruptcy Court *likely* would have "related to" jurisdiction over WSAG's claims, this court *definitely* has jurisdiction, so there is not even a small risk of EuroChem having to defend itself at two separate trials. Obviously, judicial economy is served by having all the third party claims by all third party plaintiffs tried at once.

Third, and finally, if getting a fast, cheap trial is truly the Ganskes' overarching concern, then transfer is not the only means to get one. Notably, it appears from the EuroChem Parties' response that they would not oppose a bench trial in this court if the Ganske Parties asked for one. This court is available to conduct a bench trial, either in person or *via* Zoom, during the following weeks in February 2021: February 1, February 8, February 15, and February 22. March dates are also available if none of those dates work for the parties. An early bench trial

conducted remotely in this district would address the Ganskes' concerns about both timing and convenience, as well as eliminate their stated need to retain separate trial counsel to try their third party claims before a jury.[3]  That the Ganskes have thus far not pursued this option is not a reason to transfer this case, if even transfer was available to them in the first place.

ORDER

IT IS ORDERED THAT the motion of W. Kent and Julie Ganske to transfer venue of this case to the United States Bankruptcy Court in the Eastern District of Wisconsin, dkt. 310, is DENIED.

Entered this 18th day of December, 2020.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge

---

[3] A bench trial also would obviate the need for the February 26, 2021 proffer from the Ganske parties, *see* October 22, 2020 text-only order, dkt. 308, because case management concerns are much simpler when there is no jury involved.

10